# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## PANAMA CITY DIVISION

ANTWAN JOVAN JACKSON,

      Plaintiff,

vs.

     CASE NO.:  5:19-CV-00114-MCR-MJF

SERGEANT LANIER, et al.,

      Defendants.

                   /

## DEFENDANT SHIVELY'S
## MOTION FOR FINAL SUMMARY JUDGMENT

**COMES NOW**, Defendant Nurse Shively ("Shively"), in her individual capacity, by and through the undersigned counsel and pursuant to Fed. R. Civ. P. 56, and moves this Court for entry of final summary judgment in her favor, and, in support thereof, states the following:

1.    Plaintiff is a *pro se* prisoner of the Florida Department of Corrections ("FDOC"), and is currently confined at Lake Correctional Institution ("Lake CI"). DE 36 at 23.[1]

2.    Plaintiff is suing four individuals at Northwest Florida Reception

---

[1] Inmate Population Information Detail (current as of 11/21/21) available online at http://www.dc.state.fl.us/offenderSearch/detail.aspx?Page=Detail&DCNumber=D15678&TypeSearch=AI and attached for this Court's convenience as Exhibit 1.

Center ("NWFRC") in their individual and official capacities: prison nurse Shively, and correctional officers Lanier, Plybon, and Justice. *Id*. at 2. Plaintiff claims these defendants violated his rights in connection with allegations of sexual harassment, inmate assault, and psychological emergencies at NWFRC. *Id* at 22.

3.    Plaintiff brings claims under § 1983 for an alleged violation of his Eighth and Fourteenth Amendment rights under the U.S. Constitution. *Id*. Plaintiff also asserts defendants, without specific designation of which, violated various United Nations Treaties, the Florida Administrative Code, and the Florida Constitution. *Id.*

4.    On May 10, 2021, Shively filed a Motion to Dismiss on several different grounds. *See* DE 62. To wit, Shively moved to dismiss with prejudice for Plaintiff's failure to state a claim upon which relief can be granted, Plaintiff's failure to properly exhaust his administrative remedies prior to bringing suit, Plaintiff's request for injunctive relief being moot and unenforceable against Shively, Plaintiff's request for compensatory damages failing because Plaintiff did not suffer a physical injury, Plaintiff's request for punitive damages failing because there were no allegations of conduct rising to a punitive level, claims against Shively for alleged violations of state law or treaties failing because no such private cause of action existed, Plaintiff's Fourteenth Amendment claim being duplicative of the more specific Eighth amendment claim, Plaintiff's Eighth Amendment Claim failing to

2

state a constitutional violation, and Plaintiff failing to overcome Shively's entitlement to qualified immunity. *Id*. ¶ 7.

5.     Plaintiff thereafter filed his Response in Opposition to Shively's Motion to Dismiss on August 19, 2021. DE 77. In his Response, Plaintiff re-alleged Shively "refused to act on [Plaintiff's] psychological emergency and verbal plans to attempt suicide" by responding "well hang then." *Id*. at 8. However, Plaintiff also incorporated new factual allegations not previously raised in his operative Amended Complaint, including an allegation Shively "witnessed him hanging and falling to the floor unconscious" and Shively being "clearly aware of the consequences of [Plaintiff's] actions and the danger [Plaintiff] was in." *Id*. Plaintiff cannot amend his complaint with arguments made in opposition to a motion to dismiss. *Eiras v. Fla.*, 239 F. Supp. 3d 1331, 1342 (M.D. Fla. 2017) ("it is axiomatic that a plaintiff cannot amend the complaint by arguments of counsel made in opposition to a motion to dismiss").

6.     On September 21, 2021, this Court entered an order directing Shively to file a supplemental brief as to her defense of qualified immunity. DE 81.[2] Shively timely filed her Supplemental Brief in support of her Motion to Dismiss on October

---

[2] Two orders were entered on September 21, 2021 requiring Shively to file a supplemental brief on the qualified immunity issue, but both appear to the same with only differences as to the formatting. *Compare* DE 81 *with* DE 82.

21, 2021.  DE 83.

7.    Pursuant to the Court's order, the deadline to file dispositive motions is November 22, 2021.  DE 80.  However, as of this time, the Court has not yet entered a ruling on Shively's Motion to Dismiss.  Thus, Shively incorporates into this Motion for Final Summary Judgment all of the arguments raised in her Motion to Dismiss and Supplemental Brief by reference.

8.    Chiefly, Plaintiff cannot demonstrate a constitutional violation by Shively because Plaintiff cannot show Shively was deliberately indifferent to a strong likelihood that suicide would result, or to a serious medical need of mental health care, as explained below.  Plaintiff unequivocally admitted the "real reason" he declared a psychological emergency was "due to a P.R.E.A. [Prison Rape Elimination Act] issue that led to him being assaulted," not any attempt to "hang [him]self."  *See* DE 62, Composite Exhibit 2 at FDOC 000044.

9.    Without a constitutional violation, Plaintiff's claims against Shively fail as a matter of law.

**WHEREFORE**, Plaintiff has not suffered a constitutional violation at the hands of Shively warranting any relief whatsoever.  Shively is entitled to final summary judgment in her favor as a matter of law, and for any other relief which is just and proper.

4

## STATEMENT OF UNDISPUTED MATERIAL FACT

1.     Plaintiff was incarcerated at NWFRC on and around June 25, 2018.  DE 36 at 24.

2.     Shively was employed by Centurion of Florida, LLC as a Licensed Practical Nurse ("LPN") at NWFRC on and around June 25, 2018.  Exhibit 2, Shively Declaration at ¶ 2.

3.     Plaintiff did not commit suicide on or around June 25, 2018, nor at any point up to at least November 2021 given his most recent filing with the Court dated November 15, 2021.  *See* DE 84.

4.     Plaintiff did not advise Shively of any of his concerns regarding assaults by inmates.  Exhibit 2, Shively Declaration at ¶ 3.  At no point was Shively otherwise aware inmates or correctional officers were assaulting or planning to assault Plaintiff.  *Id*. at ¶ 4.

5.     Plaintiff did not report any intent or attempt to harm himself to Shively prior to June 25, 2018.[3]  *Id*. at ¶ 5.

---

[3] Shively disputes Plaintiff *ever* advised her of an intent of, or attempt at, self-harm/suicide, including hanging himself on June 25, 2018, nonetheless ever seeing Plaintiff try to hang himself or laughing at Plaintiff.  *Id*. at ¶ 11.  However, for purposes of summary judgment, the undisputed fact remains Plaintiff did not advise Shively of any intent or attempt to harm himself prior to June 25, 2018.

6.     Shively did not have knowledge of any suicidal tendencies of Plaintiff prior to June 25, 2018.  *Id*. at ¶ 6.

7.     Shively did not prevent, delay, or otherwise inhibit Plaintiff from accessing medical or mental health care at any point.  *Id*. at ¶ 7.

8.     When dispensing medications for inmates at NWFRC, Shively was located behind a locked gate in the salley port area which physically separated her from the area where the inmates were located.  *Id*.  at 8.  Shively could not see into Plaintiff's cell from said location.  *Id*.  at ¶ 9.

9.     Shively was prohibited by policy from entering any prisoner's cell.  *Id*. at ¶ 10.

10.    On June 25, 2018 at 5:00 A.M., Plaintiff was seen in sick call and underwent a head trauma protocol by clinician LPN C. Dalton.  Exhibit 3, MacNeal Declaration as to Plaintiff's Medical/Mental Health Records at MED 000230-31; MED 000756-59.  During the subjective part of the exam, Plaintiff reported that the cause of the fall was "attempted hanging," ***the injury was not witnessed***, and his only current symptom was a headache.  *Id.*  During the subjective part of the exam, Plaintiff denied nausea, vomiting, dizziness, blurred or double vision, poor coordination, or slurred speech. During the objective part of the exam, Plaintiff's vitals were within normal limits and it was noted Plaintiff had a bump with a small, superficial "pinpoint laceration to his left eyebrow" with minimal bleeding,

6

indicating it was already healing. *Id.* Despite claiming he lost consciousness on scene for a "couple seconds," the nurse noted Plaintiff was alert and oriented to time, place, and person; was not confused, lethargic, or stuporous; and Plaintiff remembered the accident. *Id*. During the objective part of the exam, the nurse noted Plaintiff walked into the clinic and his gait was normal and his behavior was cooperative. *Id*. The nurse also observed Plaintiff's grip was equal and strong and he have full range of motion. *Id.* The nurse did not observe any bruising around the eyes or behind the ears or neck. *Id.* The nurse relayed the results of the Head Trauma Protocol evaluation to a clinician at 5:22 A.M. *Id.* Based on Plaintiff's Glasgow Coma Scale (monitoring eye opening, verbal response, and motor response), the clinician concluded Plaintiff's condition was stable and non-emergent, he was not suffering a brain injury, and thus, it was not necessary to notify EMS, transport Plaintiff to a designated head trauma center or outside facility, or obtain further diagnostic testing, such as a CT scan, MRI, or X-ray. *Id.* Accordingly, Plaintiff was instructed to return to the Medical Department if his head trauma symptoms returned or worsened or if new symptoms developed, including dizziness, memory problems, photophobia, problems with balance, nausea, vomiting, or ringing in the ears. *Id*. at MED 000231.

11.     At the same time, C. Dalton performed a mental health emergency protocol for Plaintiff based on Plaintiff's reported problem of suicidal ideations. *Id*.

7

at MED 000758-59.  Plaintiff was noted as having homicidal thoughts with a plan to "kill [him]self first."  *Id*.  During the objective exam, it was noted Plaintiff's thought process was well-organized and coherent and he did not have difficulty sleeping. *Id.*  Accordingly, it was "determined that there may be a risk for injury to himself or others" and he was placed in an infirmary isolation management room to prevent self-injury and to provide protection and observation.  *Id*. at MED 000759.

12.     Within thirty minutes, Plaintiff was admitted as an inpatient to Self-Harm Observation Status ("S.H.O.S.") with an admitting diagnosis of "suicidal ideations, self-reported attempted hanging" by psychologist M. Mason.  *Id*. at MED 000756.

13.     While Plaintiff was in S.H.O.S., Dr. A. Cordero noted Plaintiff was using mental health "for **secondary gain**."  *Id*. at MED 000757 (bolded emphasis added).  During the physical examination, Dr. Cordero's examination of Plaintiff's head, ears, nose, throat, chest, heart, lungs, abdomen, bones, joints, extremities, and neurocognitive functions showed normal other than a bruise and "small superficial laceration" on Plaintiff's left forehead. *Id.*

14.     While in S.H.O.S. at 5:35 am, it was again noted that a review of his systems during a nurse evaluation, including Plaintiff's eyes, ears, neck, throat, and neurological, respiratory, cardiovascular, musculoskeletal, gastrointestinal, and genitourinary, showed he was within normal ranges. *Id.* at MED 000762-63.

8

15.     In Plaintiff's infirmary progress record for June 25, 2018 at 6:58 A.M., MHP Reginald Jones noted Plaintiff stated "they moved me to another quad and **some inmates jumped on me so I declared a psych emergency**."   *Id*. at MED 000787 (bolded emphasis added).  Reginald Jones also noted Plaintiff stated his hope for the future was "I don't know, I think some programs may help me, **maybe another dorm or another camp**."   *Id*. at MED 000788 (bolded emphasis added).

16.     In Plaintiff's infirmary progress record for the following morning on June 26, 2018, M. Mason noted Plaintiff stated "**I'm trying to get to CSU**[4]," and Plaintiff denied suicidal and homicidal ideations.   *Id*. at MED 000783 (bolded emphasis added).  M. Mason also noted Plaintiff "**expressed a desire to cont[inue] w[ith] his PREA allegations** and work w[ith] security to resolve this issue."   *Id*. at MED 000784 (bolded emphasis added).

17.     Plaintiff was discharged from S.H.O.S. on June 26, 2018.   *Id*.

18.     At 9:49 A.M. on June 26, 2018, Plaintiff was seen in sick call and underwent an Alleged Sexual Battery Protocol by RN A. Peters.   *Id*. at MED 000232. The note for this evaluation states Plaintiff's chief complaint was "SGT Lanier stated 'I want to see your dick'" on the morning of June 25, 2018.  *Id.*  Plaintiff reported no contact was made, just the statement; and Plaintiff did not carry out the request

---

[4] "CSU" means crisis stabilization unit.  *See* Florida Department of Corrections Procedure 403.003.

so Plaintiff was moved to a different dorm where he was jumped by inmates the following day.  *Id*.  A mental health referral was made to Dr. Cordero.  *Id*. at MED 000232-33.

19.    On June 27, 2018 at 5:30 A.M., Plaintiff put in a sick call request stating he had "broken ribs, trouble breathing, chest-pains, [a] black eye, [a] swol[l]en eye, double vision, knee pains, back pains, nosebleed, [and] neck pains" which started "Monday June 25th **after I was assaulted**."  *Id*. at MED 000229 (bolded emphasis added).

20.    On June 28, 2018 at 9:11 A.M., Plaintiff was seen in sick call and underwent a head trauma protocol and back pain protocol by RN K. Mzili.  *Id*. at MED 000225-28.  This time, Plaintiff reported he "was jumped on by three guys" on June 25, 2018, and his injuries were rib pain, neck pain, back pain, blurred or double vision, and headache.  *Id*.  Plaintiff's vitals were within normal limits and it was observed there was no bleeding, no loss of consciousness on scene.  *Id*.  Upon Plaintiff's arrival to sick call he was alert and oriented to person, place and time, he was able to walk to sick call, his pupils were equal, round, reactive to light, and accommodating, there was no drainage from his ears or nose, and his range of motion was full.  *Id.*  It was also observed there was some bruising under the right eye.  Thus, a Glasgow Coma Scale and Trauma score (monitoring systolic blood pressure, respiratory rate, capillary return, eye opening, verbal response, and motor response),

was performed pursuant to protocol. *Id.* Based on his score, it was determined Plaintiff's condition was stable and non-emergent and he was not suffering a brain injury so it was not necessary to notify EMS, transport Plaintiff to a designated head trauma center or outside facility, or obtain further diagnostic testing such as a CT scan, MRI, or X-ray. *Id.* Plaintiff was given Tylenol, Motrin, and an analgesic balm, and instructed to return to the Medical Department if symptoms returned or worsened, or if new symptoms developed. *Id*. at MED 000226, MED 000228.

21.    Plaintiff submitted an informal grievance on June 30, 2018 directed to Mental Health wherein *he* wrote "**the real reason I declared a psych emergency** [on Monday, June 25, 2018] **was due to a P.R.E.A. issue that led to me being assaulted**." DE 62, Composite Exhibit 2 at FDOC 000044 (bolded emphasis added).

## MEMORANDUM OF LAW

### I.    STANDARD OF REVIEW

The moving party initially has the burden to demonstrate an absence of evidence to plaintiff's case. *Celotex Corporation v. Catrett*, 477 U.S. 317 (1986). The burden shifts to the non-moving party to come forward with evidentiary material demonstrating a genuine issue of material fact for trial. *Id.* Where the non-moving party's version of events "is so utterly discredited by the record that no reasonable jury could have believe him," the court does not have to rely "on such visible fiction" and should *not* adopt that version of facts for purposes of summary judgment. *Scott*

11

*v. Harris*, 550 U.S. 372, 380-81 (2007) (emphasis added).  "Self-serving statements by a plaintiff do not create a question of fact in the face of contradictory, contemporaneously created medical records."  *Whitehead v. Burnside, 403 F. App'x 401, 403 (11th Cir. 2010).*

## II.   PLAINTIFF CANNOT ESTABLISH A CONSTITUTIONAL VIOLATION

To establish a claim under 42 U.S.C. § 1983, a plaintiff must prove: (1) a violation of a constitutional right; and (2) the violation was committed by a person acting under the color of state law.  *Holmes v. Crosby*, 418 F.3d 1256, 1258 (11th Cir. 2005).  Shively admits she was acting under color of state law.

Under the Eighth Amendment, prisoners have a right to receive medical treatment for illness and injuries.  *Estelle v. Gamble,* 429 U.S. 97, 103–05 (1976). This includes a right to psychiatric and mental health care, and a right to be protected from self-inflicted injuries, including suicide, *Rogers v. Evans,* 792 F.2d 1052, 1058 (11th Cir. 1986);  *Edwards v. Gilbert,* 867 F.2d 1271, 1274–75 (11th Cir. 1989). Prison guards who display deliberate indifference to the serious medical and psychiatric needs of a prisoner, or deliberate indifference to a "strong likelihood," rather than a mere possibility, that a prisoner will take his own life, violate the Eighth Amendment and may be liable under § 1983.  *Estelle,* 429 U.S. at 104–05;  *Edwards,* 867 F.2d at 1276;  *Rogers,* 792 F.2d at 1058.

To establish deliberate indifference to a serious medical need, a plaintiff must

show (1) an objectively serious medical need;  (2) subjectively, the defendant was deliberately indifferent to that need;  and (3) causation between that indifference and the plaintiff's injury.  *Goebert v. Lee Cty.*, 510 F.3d 1312, 1326 (11th Cir. 2007). For the subjective component, a plaintiff must show "that the response made by [the defendant] to that need was poor enough to constitute an unnecessary and wanton infliction of pain, and not merely accidental inadequacy, negligence in diagnosis or treatment, or even medical malpractice actionable under state law."  *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000).

In the context of prison suicides or attempted suicides, § 1983 requires the defendant to "deliberately disregard 'a *strong likelihood* rather than a mere possibility that the self-infliction of harm will occur.'"  *Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cty.*, 402 F.3d 1092, 1115 (11th Cir. 2005) (quoting *Cagle v. Sutherland*, 334 F.3d 980, 986 (11th Cir. 2003)).  The mere opportunity for a prisoner to commit suicide, without more, "is clearly insufficient to impose liability on those charged with the care of prisoners."  *Tittle v. Jefferson Cnty. Comm'n,* 10 F.3d 1535, 1540 (11th Cir.1994) (en banc).  "To be deliberately indifferent to a strong likelihood that the prisoner will commit suicide, the official must be subjectively aware that the *combination* of the prisoner's suicidal tendencies and the feasibility of suicide in the context of the prisoner's surroundings creates a strong likelihood that the prisoner will commit suicide."  *Gish v. Thomas*, 516 F.3d 952,

13

954–55 (11th Cir. 2008).

The "deliberate indifference standard is a difficult burden for a plaintiff to meet." *West v. Tillman*, 496 F.3d 1321, 1327 (11th Cir. 2007). "Mere misdiagnosis or subpar care, even if it rises to the level of malpractice, does not constitute deliberate indifference." Simmons v. Fla. Dep't of Corr., 2015 WL 3454274 at 10 (M.D. Fla. 2015). "Whether governmental actors should have employed additional diagnostic techniques or forms of treatment is a classic example of a matter for medical judgment and therefore not an appropriate basis for grounding liability under the Eighth Amendment." *Adams*, 61 F.3d at 1545.

Here, all of Plaintiff's claims against Shively are based upon his allegation he reported a singular "psychological emergency" to her on June 25, 2018 at approximately 3:00 A.M. wherein Shively laughed at him and did not attempt to stop him from hanging himself. *See* Complaint. Plaintiff will likely argue Shively's laughing and lack of action evidences deliberate indifference to either a serious medical need for mental health care or a strong likelihood of suicide. Yet, Plaintiff himself concedes this purported "psychological emergency" was completely fabricated in an attempt to help him avoid being assaulted by other prisoners part of a conspiracy involving correctional officers. Facts, ¶ 20.

It is axiomatic that Plaintiff cannot deceitfully concoct a psychological emergency in order take advantage of mental health treatment taking him out of the

prison's general population to avoid contact with other inmates, and then turn around and argue he had a "serious" medical need for mental health care or there was a "strong likelihood" he was going to hurt or kill himself.

Plaintiff never conveyed his true concerns to Shively.  Facts, ¶ 4.  He never advised Shively he was in fear of being assaulted by anyone, and Shively had no knowledge Plaintiff was being assaulted by other inmates, or that other inmates were planning to assault Plaintiff.  *Id*.  Thus, it is impossible for Shively to have intervened in such a manner to protect him from an assault even if she had the ability to do so, which she did not.

As for the alleged unsuccessful suicide attempt, Shively denies Plaintiff ever told her he was going to hang himself.  Exhibit 2, Shively Declaration ¶ 5. Regardless, for summary judgment purposes, even if Plaintiff had told her on June 25, 2018 at around 3:00 A.M. that he was going to do so, it is undisputed Plaintiff never told Shively before then that he was suicidal.  Facts, ¶ 5. Moreover, Shively never had any other indication Plaintiff had suicidal tendencies prior to June 25, 2018.  Facts, ¶ 6.  Additionally, Plaintiff alleges in his very own Complaint two correctional officers, both of which were within earshot of Plaintiff, watched him attempt to hang himself off of a TV stand.  DE 36 at 25-26.  This is significant because it shows Plaintiff is unable to demonstrate Shively had subjective knowledge of Plaintiff's suicidal tendencies or subjective knowledge suicide was

feasible in the context of Plaintiff's surroundings, as required by *Gish*. 516 F.3d at 954–55. There is no evidence to support Plaintiff's allegation Shively actually knew Plaintiff's threat was genuine or that tying a sheet to a TV stand and his neck, in front of two correctional officers who are actually in the pod and authorized to enter Plaintiff's cell, would harm himself.

Beyond Plaintiff's manufactured suicide attempt, Plaintiff does not expressly allege Shively denied him access to psychiatric or mental health care. Although, even if he did, it would be impossible for him to provide evidence to support such an allegation because he was seen under the mental health emergency protocols less than two hours after he purportedly told Shively he was going to hang himself. Facts, ¶¶ 11-12. Moreover, Plaintiff was seen in the mental health clinic that very morning where he was admitted to S.H.O.S. and observed for an entire day through the following morning. Facts, ¶¶ 12-19. The record simply does not support a finding a two hour delay in getting mental health treatment is enough to establish a constitutional violation because there is no evidence demonstrating Plaintiff's "suicidal tendencies" posed a substantial risk of serious harm if left unattended. *Monteleone v. Corizon*, 686 F. App'x 655, 660 (11th Cir. 2017) (recognizing the seriousness of chronic back pain but ruling "the record does not support a finding that the two-and-a-half week delay here was enough to establish a constitutional violation because Mr. Monteleone has not provided evidence demonstrating that if

left unattended, his back pain "pose[d] a substantial risk of serious harm."). The medical evidence confirms Plaintiff's self-serving claim did not indicate a "life-threatening condition[] or situation[] where it [was] apparent that delay would detrimentally exacerbate the medical problem," *Hill v. Dekalb Reg'l Youth Det. Ctr.,* 40 F.3d 1176, 1187 (11th Cir. 1994), or "one that, if left unattended, poses a substantial risk of serious harm," *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003).

Rather, Plaintiff was simply attempting to use (and, in fact, successfully used) the mental health care system to be transferred to a different dormitory given his disclosures to medical staff wherein he stated "some inmates jumped on me so I declared a psych emergency," and "I'm just trying to get to CSU." Facts, ¶¶ 14-15. Plaintiff also told medical staff he wanted to continue with his P.R.E.A. allegations and his hope for the future was "another dorm or another camp." *Id*. Dr. A. Cordero appears to have picked up on Plaintiff's actual intent based on Dr. Cordero's notation Plaintiff was using mental health "for secondary gain." Facts, ¶ 12.

Even if we assume, *arguendo*, Plaintiff demonstrated an objectively serious medical need, Plaintiff cannot prove Shively was deliberately indifferent. It is not enough to show a reasonable person would have known of the serious medical need. Plaintiff must show that Shively *herself actually knew* Plaintiff had a serious medical need and required immediate attention. It is not enough to show Shively was

17

careless, or even that she neglected her job duties and should have known about Plaintiff's need.    Absent from the record is evidence showing Shively was deliberately indifferent to Plaintiff's serious medical need.

There is no evidence Shively actually perceived a serious medical need and purposely withheld medical care for that need.  There is no evidence Shively knew Plaintiff had suicidal tendencies or there was a strong likelihood Plaintiff would harm himself.  Prior to seeing Shively during "med call," Plaintiff did not declare a psychological emergency despite the presence of at least two correctional officers in Plaintiff's dorm.  Around 3:00 A.M., Shively was in the sally port making her rounds to the various dorms to hand out medicine.  Plaintiff's cell was opened by the correctional officers for "med call" wherein the inmates lined up to get their medicine from the nurse.  When Plaintiff went to the receive his medicine through the slot at the sally port door, Plaintiff purportedly told Shively he was going to hang himself.  Such an assertion, without more, strains credulity given the circumstances. Shively could not see into Plaintiff's cell and two classification officers were in the dorm.    Thus, Shively should not have perceived Plaintiff as suicidal even if Plaintiff's allegation was true.  The fact Plaintiff admits he was not suicidal only confirms such.  Absent additional record evidence, Shively's actions simply to not support a finding she was subjectively aware of Plaintiff's mental health needs or she drew the inference there was a strong likelihood of self-harm.  *See Moore v.*

18

*Hunter*, 847 F. App'x 694, 697 (11th Cir. 2021).

Notably, within two hours of purportedly telling Shively of his intent to hang himself, Plaintiff received mental health treatment.  Thus, this is not a case where Plaintiff did not receive any treatment or where Shively refused, delayed, or blocked treatment for non-medical purposes.  Instead, Plaintiff appears to dispute the treatment was sufficient.  Plaintiff's own judgment, however, does not establish a claim of deliberate indifference.

In cases where an inmate received medical attention and the dispute is over the adequacy of that attention, courts should be reluctant to question the accuracy or appropriateness of the medical judgments that were made.  *Harris v. Thigpen*, 941 F. 2d 1495, 1507 (11th Cir.1991);  *Woody v. Cronic*, 401 Fed. Appx. 509, 512 (11th Cir. 2010) ("inmate who receives a medical diagnosis and care, but desires a different diagnosis or treatment, cannot show deliberate indifference").  A difference of opinion over matters of medical judgment does not give rise to a constitutional claim.  *Harris*, 941 F. 2d at 1505.  Plaintiff's allegations are merely conclusory. There is nothing in the record indicating Shively did anything other than what she felt was appropriate based on her medical judgment.  *Hall v. Moore*, No. 3:14CV140/MCR/CJK, 2015 WL 9946410 (N.D. Fla. 2015), *report and recommendation adopted*, 2016 WL 394012 (N.D. Fla. 2016) (when considering a motion for summary judgment, a court may not "accept any facts that are 'blatantly

19

contradicted by the record, so that no reasonable jury could believe [them]'"). Notably, the medical professionals–both licensed mental health counselors and doctors–who examined Plaintiff after Shively, do not find Plaintiff's claims of self-harm credible.  While perhaps plausible to a non-medical individual like Plaintiff, Plaintiff's judgement cannot replace that of the medical professionals.  Plaintiff has offered no expert testimony to support his allegations to the contrary.

Based on the record evidence, no reasonable jury could find Shively's actions constituted deliberate indifference.  *Hoffer v. Sec'y, Fla. Dep't of Corr.,* 973 F.3d 1263, 1276 (11th Cir. 2020) (it is "worth reiterating at the outset the stringency of the deliberate-indifference standard" because it is easy to lose track of it and impermissibly evaluate a defendant's alleged conduct against a negligence (or perhaps even more lenient) benchmark; "the deliberate indifference standard ... is far more onerous than normal tort-based standards of conduct sounding in negligence,' and is in fact akin to 'subjective recklessness as used in the criminal law").  The question here is not whether, in the best of all possible worlds, Shively should have referred Plaintiff to S.H.O.S. immediately simply because Plaintiff said he was suicidal.  Rather, the question is whether Shively's treatment was so reckless, so conscious-shocking, that it violates the Constitution.  As explained herein, it is not.

Nonetheless, Plaintiff is unable to provide evidence demonstrating causation between Shively's alleged indifference and Plaintiff's "injury" because of the intervening beat down he received by three inmates. Plaintiff must prove Shively's conduct caused Plaintiff injury. "A § 1983 claim requires proof of an affirmative causal connection between the defendant's acts or omissions and the alleged constitutional deprivation." *Troupe v. Sarasota Cnty., Fla.*, 419 F.3d 1160, 1165 (11th Cir. 2005). The requisite causation includes proof of legal and proximate causation. *Jackson v. Sauls*, 206 F.3d 1156, 1168 n.16 (11th Cir. 2000). "A plaintiff must show that, except for that constitutional tort, such injuries and damages would not have occurred and further that such injuries and damages were the reasonably foreseeable consequences of the tortious acts or omissions in issue." *Id*. Here, Plaintiff failed to establish Shively's alleged conduct caused Plaintiff *any* injury.

Plaintiff expressly states "[a] few minutes" after he fell to the floor from his alleged suicide attempt, two inmates approached him and one struck him before telling him to get away from the door. DE 36 at 26. Then, "[a] few minutes later," both inmates began punching and kicking him before a third inmate came and also beat him up. *Id*. This corresponds with Plaintiff's sick call request on June 27, 2018 wherein he reported "broken ribs, trouble breathing, chest-pains, [a] black eye, [a] swol[l]en eye, double vision, knee pains, back pains, nosebleed, [and] neck pains" which started "Monday June 25th after I was assaulted." Facts, ¶ 18. Similarly, this

information corresponds with the medical narrative for June 28, 2018 when Plaintiff was actually seen in sick call and the treating provider noted Plaintiff "was jumped on" by three guys on June 25, 2018, and his injuries were rib pain, neck pain, back pain, blurred or double vision, and headache.  Facts, ¶ 19.

Once Plaintiff was admitted to S.H.O.S. around 5:30 to 6:00 A.M. on June 25, 2018, he remained in S.H.O.S. until the morning of June 26, 2018.  *See* Facts, ¶¶ 12, 16.  However, even prior to this time, Plaintiff had been evaluated by medical at 5:00 A.M.  Facts, ¶¶ 10-11.  This means Plaintiff's assault must have occurred between the time he was approached by Plybon at 3:00 A.M. and the time he was medically evaluated at 5:00 A.M.  Plaintiff also alleges his suicide attempt took place during this same time frame, nearly immediately before he was first punched by one of the inmates.  As such, Plaintiff cannot show any alleged injuries from his purported suicide attempt were in fact caused by the suicide attempt as opposed to the beat down by three inmates, nonetheless can he show any of those injuries were the result of any conduct by Shively.

## CONCLUSION

For the reasons provided above, as well as in Shively's Motion to Dismiss and Supplemental Brief, Plaintiff has failed to evidence a constitutional violation at the hands of Shively.  Without a constitutional violation, Plaintiff's claims against Shively fail as a matter of law.  Shively also incorporates into this Motion for

Summary Judgment all arguments made in her Motion to Dismiss and Supplemental Brief, as noted in the foregoing.  Shively is entitled to final summary judgment in her favor, and for any other relief which is just and proper.

## CERTIFICATE OF WORD COUNT

I certify that this Memorandum complies with the word count limitation set forth in Local Rule 7.1(F) because this Memorandum contains 5,327 words, excluding the parts exempted by said Local Rule.

Respectfully submitted,

/ s / Derek M. Dzwonkowski
LINDA BOND EDWARDS
Florida Bar No.:  0057282
E-mail:  ledwards@rumberger.com
KAYLA E. PLATT RADY
Florida Bar No.:  0117896
E-mail:  krady@rumberger.com
DEREK M. DZWONKOWSKI
Florida Bar No.: 1002733
E-mail: ddzwonkowski@rumberger.com
RUMBERGER, KIRK & CALDWELL, P.A.
101 North Monroe Street, Suite 120
Tallahassee, Florida 32301
Tel:  850.222.6550
Fax:  850.222.8783

Attorneys for Defendant Shively

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 22, 2021, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system. I further certify

that I mailed the foregoing document by first-class mail to the following non-CM/ECF participant: Antwan Jovan Jackson D15678, Lake Correctional Institution, 19225 Hwy 27, Clermont, Florida 34715.

/ s / Derek M. Dzwonkowski

LINDA BOND EDWARDS
Florida Bar No.:  0057282
E-mail:  ledwards@rumberger.com
KAYLA E. PLATT RADY
Florida Bar No.:  0117896
E-mail:  krady@rumberger.com
DEREK M. DZWONKOWSKI
Florida Bar No.: 1002733
E-mail: ddzwonkowski@rumberger.com
RUMBERGER, KIRK & CALDWELL, P.A.
101 North Monroe Street, Suite 120
Tallahassee, Florida 32301
Tel:  850.222.6550
Fax:  850.222.8783

Attorneys for Defendant Shively

15929579.v1

# EXHIBIT "1"

 (//www.dc.state.fl.us/index.html)



**Ron DeSantis, Governor**

**Ricky D. Dixon, Secretary**

Florida
Department of
Corrections
(//www.dc.state.fl.us
/index.html)

"Inspiring Success by
Transforming One Life at a
Time"

**Offender Search (/OffenderSearch/InmateInfoMenu.aspx)**

**Visit an Inmate (//www.dc.state.fl.us/ci/visit.html)**

**Correctional Institutions (//www.dc.state.fl.us/ci/index.html)**

**Probation Services (//www.dc.state.fl.us/cc/index.html)**     **FDC Jobs (http://www.fldocjobs.com)**

**Newsroom (//www.dc.state.fl.us/comm/index.html)**     **Statistics (//www.dc.state.fl.us/pub/index.html)**

# Corrections Offender Network

### Inmate Population Information Detail

(This information was current as of 11/21/2021)



| | |
|---|---|
| **DC Number:** | D15678 |
| **Name:** | JACKSON, ANTWAN J |
| **Race:** | BLACK |
| **Sex:** | MALE |
| **Birth Date:** | 09/25/1980 |
| **Initial Receipt Date:** | 09/01/2006 |
| **Current Facility:** | LAKE C.I. (http://prod.fdc-wpws001.fdc.myflorida.com/org/facilitydir.html#X312) |
| **Current Custody:** | MEDIUM |
| **Current Release Date:** | 08/09/2030 |

**Aliases:**

GA, ANTWAN J JACKSON, ANTWAN JOVAN JACKSON

## Current Prison Sentence History

(Release Date subject to change pending gain time award, gain time forfeiture, or review. A 'TO BE SET' Release Date is to be established pending review.)

| Offense Date | Offense | Sentence Date | County | Case No. | Prison Sentence Length |
|---|---|---|---|---|---|
| 03/21/2006 | CARJACK W/FA,DEADLY WEAPON | 08/25/2006 | ORANGE | 0604073 | 25Y 0M 0D |
| 03/21/2006 | ROBB. GUN OR DEADLY WPN | 08/25/2006 | ORANGE | 0604073 | 25Y 0M 0D |
| 03/21/2006 | ROBB. GUN OR DEADLY WPN | 08/25/2006 | ORANGE | 0604073 | 25Y 0M 0D |

Note: The offense descriptions are truncated and do not necessarily reflect the crime of conviction. Please refer to the court documents or the Florida Statutes for further information or definition.

## Incarceration History:

| Date In-Custody | Date Out-Custody |
|---|---|
| 09/01/2006 | Currently Incarcerated |

| First | Previous | Next | Last | Return to List | | New Search |

The Florida Department of Corrections updates this information regularly, to ensure that it is complete and accurate, however this information can change quickly. Therefore, the information on this site may not reflect the true current

location, status, release date, or other information regarding an inmate.

This database contains public record information on felony offenders sentenced to the Department of Corrections. This information only includes offenders sentenced to state prison or state supervision. Information contained herein includes current and prior offenses. Offense types include related crimes such as attempts, conspiracies and solicitations to commit crimes. Information on offenders sentenced to county jail, county probation, or any other form of supervision is not contained. The information is derived from court records provided to the Department of Corrections and is made available as a public service to interested citizens. The Department of Corrections makes no guarantee as to the accuracy or completeness of the information contained herein. Any person who believes information provided is not accurate may contact the Department of Corrections.

For questions and comments, you may contact the Department of Corrections, Bureau of Classification and Central Records, at (850) 488-9859 or go to <u>Frequently Asked Questions About Inmates for more information ( http://prod.fdc-wpws001.fdc.myflorida.com/ci/index.html )</u>. This information is made available to the public and law enforcement in the interest of public safety.

<u>Search Criteria: (/OffenderSearch/search.aspx?TypeSearch=AI)</u>

---

<u>Return to Corrections Offender Information Network (../OffenderSearch/InmateInfoMenu.aspx)</u>

---

## About Us (http://www.dc.state.fl.us /about.html)

*As Florida's largest state agency, and the third largest prison system in the country, FDC employs 24,000 members, incarcerates approximately 96,000 inmates and supervises nearly 166,000 offenders in the community.*

## Quick Links

<u>Contact an Inmate (http://www.dc.state.fl.us /ci/ContactInmate.html)</u>
<u>Public Records (//www.dc.state.fl.us /comm/PRR.html)</u>
<u>Volunteer (http://www.dc.state.fl.us /volunteer/index.html)</u>
<u>File a Complaint (//www.dc.state.fl.us /apps/IGcomplaint.asp)</u>
<u>Organization (//www.dc.state.fl.us /org/orgchart.html)</u>
<u>Regulatory Plan (//www.dc.state.fl.us /pub/regulatory /2017-2018.pdf)</u>

<u>Victim Services (//www.dc.state.fl.us /vict/index.html)</u>
<u>Inmate and Offender Programming (//www.dc.state.fl.us /development /index.html)</u>
<u>Corrections Foundation (https://www.correctionsfoundation.org/)</u>
<u>Parole Information (https://www.fcor.state.fl.us /index.shtml)</u>
<u>Inspector General (//www.dc.state.fl.us /ig/index.html)</u>
<u>Prison Rape Elimination Act (http://www.dc.state.fl.us /PREA/index.html)</u>

## Contact Us (http://www.dc.state.fl. /org/contact.html)

*501 South Calhoun Street*
*Tallahassee, FL 32399-2500*

*Main: (850) 488-5021*

<u>Phone Directory (//www.dc.state.fl.us /org/contact.html)</u>
<u>Citizen Services (//www.dc.state.fl.us /citizen/index.html)</u>

# EXHIBIT "2"

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**PANAMA CITY DIVISION**

ANTWAN JOVAN JACKSON,

      Plaintiff,

vs.

    CASE NO.: 5:19-CV-00114-MCR-MJF

SERGEANT LANIER, et al.,

      Defendants.

_____/

STATE OF FLORIDA

COUNTY OF _Bay_

**DECLARATION OF ANNETTE SHIVELY**

    I, Annette Shively, pursuant to 28 U.S.C. § 1746, declare under penalty of perjury that the statements made below are true and correct:

    1.    I am over the age of 18 and have personal knowledge of the matters set forth herein.

    2.    My name is Annette Shively. I was employed by Centurion of Florida, LLC as a licensed practical nurse at Northwest Florida Reception Center on and around June 25, 2018 where I provided medical care to prisoners committed to the Florida Department of Corrections ("FDOC").

3.     Antwan Jackson never told me about any concerns he had regarding other inmates, nor did he ever tell me he was concerned about being assaulted by anyone.

4.     I was never aware other inmates or correctional officers assaulted Mr. Jackson or planned to assault Mr. Jackson.

5.     Mr. Jackson never reported to me prior to June 25, 2018 that he intended to hurt himself or others.  In fact, he never reported to me that he intended to hurt himself or others at any point in time.

6.     I did not know of any suicidal tendencies of Mr. Jackson prior to June 25, 2018.

7.     I never prevented or delayed, or attempted to prevent or delay, Mr. Jackson from accessing any kind of medical or mental health care.

8.     As part of my duties of a licensed practical nurse at Northwest Florida Reception Center, I dispensed medications to inmates.   While dispensing medications, I was physically located behind a locked gate in the salley port area which separated me from the area where the inmates would be to pick up their medications.

9.     I could not see into Mr. Jackson's cell from the location behind the locked gate in the salley port area where I dispensed medications.

10.    I was prohibited by Florida Department of Corrections policy from entering any prisoner's cell, including the cell of Mr. Jackson.

11.    Mr. Jackson never told me he was having a psychological emergency or that he was going to hang himself.  I never saw Mr. Jackson try to hang himself or tie a sheet around his neck or a TV stand.  I never laughed at Mr. Jackson.

Executed this ___19___ day of November, 2021.

**FURTHER DECLARANT SAYETH NAUGHT.**

ANNETTE SHIVELY

# EXHIBIT "3"

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
### PANAMA CITY DIVISION

ANTWAN JOVAN JACKSON,

     Plaintiff,

vs.

                       CASE NO.:  5:19-CV-00114-MCR-MJF

SERGEANT LANIER, et al.,

     Defendants.

_____ /

STATE OF FLORIDA

COUNTY OF _LAke County_

## DECLARATION OF RONALD MACNEAL

I, Ronald MacNeal, pursuant to 28 U.S.C. § 1746, declare under penalty of perjury that the statements made below are true and correct:

1.    I am over the age of 18 and have personal knowledge of the matters set forth herein.

2.    I am currently employed as the Health Services Administrator at Lake Correctional Institution.

3.     A true and accurate copy of Antwan Jackson's (DC # D15678) FDOC

medical records is attached hereto as Attachment "A."

Executed this _22nd_ day of November, 2021.

**FURTHER DECLARANT SAYETH NAUGHT.**

Ron Macneal, RHIT, HSA
Lake C.I.-Centurion

RONALD MACNEAL

# ATTACHMENT "A"

**FLORIDA DEPARTMENT OF CORRECTIONS**
**OFFICE OF HEALTH SERVICES**
**BACK PAIN PROTOCOL**
NOTE: ALL PROTOCOLS COMPLETED BY LPNS MUST BE REVIEWED AND COSIGNED BY A RN OR CLINICIAN.

| SUBJECTIVE: Date: 10.28.18  Time: 0911  Age: 37  ☑ Sick Call ☐ EMID |
|---|

Allergies: NKDA
Current Medications: Colutt
Medical Hx: Mental Health
Hx of back pain/back problems? ☑ No ☐ Yes → what was the problem/diagnosis? _N/A_
What treatment did patient receive for previous back pain? _N/A_
Chief complaint: "I was jumped on by 3 people"
When did current pain begin? _10-25-18_   Pain level: ☐ 0 ☐ 1 ☐ 2 ☐ 3 ☐ 4 ☐ 5 ☐ 6 ☐ 7 ☑ 8 ☐ 9 ☑ 10
What were you doing (activity) when the pain began? _altercation_
If back pain is the result of trauma, does patient have any other injuries? ☐ No ☑ Yes → Other injuries:
_left ribs, back pain, neck pain,_
Description of pain: ☐ Sharp ☑ Aching ☐ Burning ☐ Other:
Location of pain:

| | | | | |
|---|---|---|---|---|
| ☑ Cervical region | ☑ Left | ☐ Right | ☐ Center (over spinal column) | left neck |
| ☐ Thoracic region | ☐ Left | ☐ Right | ☐ Center (over spinal column) | |
| ☑ Lumbar region | ☑ Left | ☐ Right | ☐ Center (over spinal column) | |
| ☐ Sacral region | ☐ Left | ☐ Right | ☐ Center (over spinal column) | |

Flank region pain with or without radiation to groin? ☐ No ☐ Yes → Use "Urinary Symptoms Protocol," DC4-683BB.
Is pain localized? ☐ No ☑ Yes OR Does pain radiate? ☑ No ☐ Yes, to: _N/A_
Does pain increase with activity? ☐ No ☑ Yes → what activity? _any movement_
Are you able to find position of comfort? ☑ No ☐ Yes: _none_
What decreases or relieves the pain? _being still, taking meds_
Does pain increase with deep inspiration? ☐ No ☐ Yes  NOTE: If inmate has any URI symptoms use
"Cold/URI/Influenza Symptoms Protocol," DC4-683U instead.
Did you wake up with this pain (i.e., there was no pain when patient went to bed)? ☑ No ☐ Yes
Back muscle spasms? ☑ No ☐ Yes
Numbness or tingling in any extremity? ☑ No ☐ Yes → which extremity? _N/A_
Is numbness/tingling in extremities: ☐ Intermittent ☐ Constant
Problem with incontinence? ☑ No ☐ Yes ☐ Bowel ☐ Bladder   Recent weight loss? ☑ No ☐ Yes
Pain with urination? ☑ No ☐ Yes → Use "Urinary Symptoms Protocol," DC4-683BB.
Blood in urine? ☑ No ☐ Yes → Use "Urinary Symptoms Protocol," DC4-683BB.

| OBJECTIVE: Temp: 98.3  Pulse: 72  Resp: 18  Blood Pressure: 111/111  O2 sat: 97 % Weight: 145 |
|---|

3 prev. weights w/dates _____   _Slight swelling to left ribs_
Gait: ☑ Normal ☐ Limping ☐ Walks bent over ☐ Shuffling gait
Back exam: Swelling noted: ☑ No ☐ Yes → where: _____
Discoloration/bruising noted: ☑ No ☐ Yes → where: _____

| FINDINGS REQUIRING IMMEDIATE CLINICIAN NOTIFICATION |
|---|

☐ Abnormal vital signs: ☐ BP less than 90/60 or greater than 160/100
  ☐ Heart rate less than 60 or greater than 110
  ☐ Temperature greater than 100.4°F
  ☐ weight loss ≥ 10% of body weight in 6 months without trying
☐ Severe back pain
☐ Back pain with **new** onset of numbness or tingling in either or both lower extremities
☐ Back pain which radiates through buttock and down one extremity

K. Mzili, RN
NWFRC

INMATE NAME: Jackson Antwon
DC#: D15670  RACE: B  SEX: M
DATE OF BIRTH: 9-25-80
INSTITUTION: 125

SIGNATURE AND STAMP/ PRINT of person completing form

RN OR CLINICIAN REVIEWER

DC4-683S (Revised 6/6/18)

Page 1 of 2
This form is not to be amended, revised, or altered without approval of the Chief of Health Services Administration.

**FLORIDA DEPARTMENT OF CORRECTIONS**
**OFFICE OF HEALTH SERVICES**
**BACK PAIN PROTOCOL**
NOTE:  ALL PROTOCOLS COMPLETED BY LPNS MUST BE REVIEWED AND COSIGNED BY A RN OR CLINICIAN.

| PLAN |
|---|
| ☐ Clinician: _____   Time notified: _____ |
| ☐ Give ibuprofen 200mg 2 tablets by mouth now **OR** ☐ acetaminophen 325mg 2 tablets by mouth now for pain |
| ☒ Prescribe OTC topical analgesic |
| ☐ Follow-up appointment |
| ☐ Pass: _____ |
| ☐ Other: _____ *analgesic balm* _____ |

| EDUCATION   *Motrin X5*        *Tylenol X5* |
|---|
| ☒ Inmate instructed to limit activity until discomfort improves |
| ☒ Inmate instructed to take: |
| ☐ Medication as directed by physician, AND/OR |
| ☒ Ibuprofen 200mg 2- 3 tabs by mouth 3-4 times/day OR |
| ☒ Acetaminophen 325mg 2 tablets by mouth 3-4 times/day |
| ☒ For new onset of back pain (i.e., less than 72 hours), inmate instructed to apply covered ice pack or cold compress/towel to painful area 3-4 times a day.  After 72 hours, inmate instructed to apply warm moist towel to painful area 3-4 times a day for relief of pain. |
| ☒ If prescribed analgesic balm, instructed to apply a thin layer in affected area 3-4 times a day for pain relief.  Inmate instructed to wash hands thoroughly after applying balm. |
| ☒ Inmate instructed to return if symptoms return or worsen, or if any new symptoms develop. |

INMATE NAME: *Jackson, Andwan*
DC#: *D15619*   RACE: *B*   SEX: *M*
DATE OF BIRTH: *9-25-90*
INSTITUTION: *175*

K. Mzili, RN
NWFRC

SIGNATURE AND STAMP/ PRINT of person completing form

RN OR CLINICIAN REVIEWER

DC4-683S (Revised 6/6/18)

Page 2 of 2
This form is not to be amended, revised, or altered without approval of the Chief of Health Services Administration.

**DEPARTMENT OF CORRECTIONS**
**OFFICE OF HEALTH SERVICES**
**HEAD TRAUMA PROTOCOL**

NOTE: ALL PROTOCOLS COMPLETED BY LPNS MUST BE REVIEWED AND COSIGNED BY A RN OR CLINICIAN.

**SUBJECTIVE:** Date: 6-26-18   Time: 911   Age: 37   ☒ Sick Call   ☐ EMID

Allergies: NKDA
Current Medication/s: Zoloft
Last Tetanus Toxoid: UKN
Chief Complaint:
Mechanism of Injury (MOI):  ☒ Blunt head trauma → head was hit with: I/M was jumped m by 3 guys
                            ☐ Penetrating head trauma → penetrating object was: fists??
                            ☐ Fall → Distance of fall:                    Cause of fall:
                            ☐ Other:

Date and time of injury: 6-25-18
Was injury witnessed? ☐ No ☐ Yes, by: UKN   Pain Level: ☐0 ☐1 ☐2 ☐3 ☐4 ☒4 ☐5 ☐6 ☐7 ☐8 ☐9 ☐10

Current symptoms: ☒ Headache ☐ Nausea ☐ Vomiting ☐ Dizziness ☒ Blurred or double vision ☐ Poor coordination
                  ☐ Slurred speech ☐ Other/s:   resolved
Other injuries: rib pain, neck pain, back pain

**OBJECTIVE:** Temp: 98.3 Pulse: 72 Resp: 18 Blood Pressure: 111/71 O2 sat: 97 % Weight: 145
☐ Maintain patent airway.
NOTE: Head injuries frequently have concurrent cervical spinal cord injuries due to either the neck "snapping" forward or
backwards when the head is hit with an object, or from the impact of the patient falling after being hit in the head.   Blood sugar:              Time:            (all patients).
Location of injury: Rt side d Jaw
Appearance of head wound: ☐ Ecchymotic area ☐ Hematoma ☐ Abrasion ☐ Laceration ☐ Depressed area on skull
NOTE: If patient has abrasion/laceration, also use "Abrasion/Laceration Protocol," DC4-683V to document the injury.
Bleeding at this time: ☒ None noted ☐ Oozing / Minimal ☐ Moderate ☐ Severe ☐ Pulsing spurt
Loss of consciousness on scene? ☒ No ☐ Yes → for how long? N/A
LOC on arrival: ☒ A&O x3 ☐ Confused → disoriented to: ☐ person ☐ place ☐ time ☐ Lethargic ☐ Stuporous
                ☐ Comatose
Does patient remember accident? ☐ No ☒ Yes
If patient walked in, gait was: ☐ N/A ☒ Normal ☐ Abnormal → Describe: N/A
Behavior: ☒ Cooperative ☐ Asking repetitive questions ☐ Restless/Agitated ☐ Combative ☐ Seizure activity
Pupils PERRLA: ☐ No ☒ Yes → Describe: N/A
Drainage (clear, serosanguinous, bloody) from ears or nose? ☒ No ☐ Yes → Describe: N/A
Grips equal and strong: ☐ No ☒ Yes → Describe:
ROM: ☒ Full ROM ☐ Decreased ROM in → ☐ LUE ☐ RUE ☐ LLE ☐ RLE
Bruising noted around the eyes (raccoon eyes) or behind the ears: ☐ No ☒ Yes → Describe: bruising under Rt eye
Calculate GCS and RTS using GCS / RTS tables on PAGE 2.  Time: 911 Initial GCS 11 Initial RTS 15

**FINDINGS REQUIRING IMMEDIATE CLINICIAN NOTIFICATION**
☐ Unconscious patient or patient with h/o unconsciousness
☐ Pulse less than 58 or higher than 110 beats per minute
☐ Pulse ox less than 93%
☐ Respirations less than 10 and higher than 24
☐ Blood pressure less than 90/60 and higher than 140/90
☐ Any abnormal findings as listed above.
☐ Arterial bleed (bright red, usually spurts from wound)
☐ Patient is on an anticoagulant
☐ GCS less than 15.
☐ Severe headache

**LAN**
☐ Activate EMS for unconscious patient – If at all possible, leave patient where found and have EMS remove pt from
scene.
☐ Activate EMS for uncontrollable bleeding

INMATE NAME: Jackson, Antwan
#: D151675   RACE: B   SEX: M
DATE OF BIRTH: 9-25-80
INSTITUTION:
DC4-683K (Revised 3/7/17)

SIGNATURE AND STAMP/ PRINT of person completing form   K. Mzili, RN
                                                        NWFRC

RN OR CLINICIAN REVIEWER

This form is not to be amended, revised, or altered without approval of the Chief of Health Services Administration.

Page 1 of 2

MED 000227



**DEPARTMENT OF CORRECTIONS**
**OFFICE OF HEALTH SERVICES**
**HEAD TRAUMA PROTOCOL**
**NOTE: ALL PROTOCOLS COMPLETED BY LPNS MUST BE REVIEWED AND COSIGNED BY A RN OR CLINICIAN.**

☐ Start oxygen at 3L/min/NC for all moderate to severe head trauma patients.
☐ Notify clinician for any patient with h/o unconsciousness or for any abnormal findings as listed above.
Clinician Name: _____   Time notified: _____
☐ Monitor patient for changes in neurological status and decreased LOC.
☐ For minor – moderate head injury that doesn't need ER evaluation, verify with the clinician whether or not he/she wants patient admitted to the infirmary (around the clock or just at bedtime) for responsiveness checks every 4 hours for the next 48 hours.
☐ Wake patient after the first hour of sleep and then every 4 hours to check on breathing and responsiveness; ask patient's name, age, and current location ("infirmary at Gulf CI") to make sure he/she is not confused.
☐ For minor head injuries: Apply covered ice pack to swelling for 15-20 minutes, repeat in one hour.
☐ Don't give any pain medications without clinician's approval.
☐ Wound care: See "Abrasion/Laceration Protocol," DC4-683V, and document your care on that DC form.

| EDUCATION | Tylenol X5 |
|---|---|

☐ Pain medication per clinician's order: _____
☐ Inmate instructed to apply covered ice pack to hematoma 3-4 times per day for the next 48 hours.
☐ Inmate instructed re: wound care per "Abrasion/Laceration Protocol," DC4-683V.
☒ Inmate instructed to return to the Medical Department if symptoms return or worsen, or if new symptoms develop - such as a headache that persists, dizziness, memory problems, photophobia, problems with balance, nausea or vomiting, ringing in the ears.

| Table 3.2          Trauma Score [a, b] | | Glasgow Coma Score (GCS) | | |
|---|---|---|---|---|
| | Points/Score | | Points | |
| | | **Eye opening** | | |
| **Respiratory rate** | | Spontaneous | (4) | |
| 36/min or above | 2 | To voice | 3 | |
| 25  35/min | 3 | To pain | 2 | |
| 10-24/min | (4) | None | 1 | |
| 0-9/min | 1 | **Verbal Response** | | Total GCS |
| None | 0 | Oriented | (5) | Points   Score |
| **Respiratory Expansion** | | Confused | 4 | 14-15   5 |
| Normal | (1) | Inappropriate words | 3 | 11-13   4 |
| Shallow | 0 | Incomprehensible words | 2 | 8-10   3 |
| Reactive | 0 | None | 1 | 5-7   2 |
| **Systolic blood pressure** | | **Motor Response** | | 3-4   1 |
| 90 mm Hg or above | (4) | Obeys command | (6) | |
| 70-89 mm Hg | 3 | Localized pain | 5 | |
| 50-69 mm Hg | 2 | Withdraw (pain) | 4 | |
| 0-49 mm Hg | 1 | Flexion (pain) | 3 | |
| No pulse | 0 | Extension (pain | 2 | |
| **Capillary return** | | None | 1 | |
| Normal | (2) | **Total:** | _____ (3-15) | |
| Delayed | 1 | | | |
| None | 0 | | | |

A Coma Score of 13 or higher correlates with a mild brain injury; 9 to 12 is a moderate injury and 8 or less a severe brain injury.

**RTS = GCS + SBP score + RR score**
**16  =  9   +   3      +   4**

An RTS of less than 11 is used to indicate the need for transport to a designated trauma center.

The Revised Trauma Score (RTS) is one of the more common physiologic scores. It uses 3 specific physiologic parameters, as follows: (1) Glasgow Coma Scale (GCS), (2) systolic blood pressure (SBP), and (3) respiratory rate (RR).

[a]Advanced Trauma Life Support Guidelines, American College of Surgeons, 1985. With permission.
[b]Since the outcome can be correlated with initial trauma score, a patient with a trauma score of 12 or less should optimally be managed at a level I or II trauma center.

INMATE NAME: Jackson Antwan
DC#: D15619   RACE: B   SEX: M
DATE OF BIRTH: 9-25-80
INSTITUTION: 125

SIGNATURE AND STAMP/ PRINT of person completing form
K. Mzili, RN

RN OR CLINICIAN REVIEWER

DC4-683K (Revised 3/7/17)                                                                              Page 2 of 2
This form is not to be amended, revised, or altered without approval of the Chief of Health Services Administration.

MED 000228

**DEPARTMENT OF CORRECTIONS**
**OFFICE OF HEALTH SERVICES**
# INMATE SICK-CALL REQUEST

Date: 6-27-18                                    Time: 5:30 AM

Inmate Name: JACKSON, ANTWAN          DC#: D15678

Housing assignment: J1201                 Date/Time: 6-28-18

Job assignment: N/A

Sick Call Triage
Circle One:
1. Emergent (immediate)
2. Urgent (within 24 hrs)
3. Routine (within 7 days)

0700

K. Mzili, RN
NWFRC

Problem:

☐  Pass/pass renewal

☐  Medication renewal

☐  Need information (explain): _____

☐  Mental Health

☐  Dental

☑  Medical (explain): Broken Ribs, Trouble breathing, Chest-
pains, black Eye, Swolen Eye, Double vision, Knee
pains, Back pains, Nose bleed, Neck pains.

_____

_____

_____

_____

When did problem/symptoms start? Monday June 25th After I was
Assulted.

_____

_____

_____

Inmate Name JACKSON, ANTWAN
DC# D15678                    Race/Sex B/M
Date of Birth 9-25-80
Institution N.W.F.R.C.

Distribution:  Original—Nursing Supervisor
Pink—Inmate (special housing only-otherwise
destroy copy)

This form is not to be amended, revised, or altered
without approval by the Office Health Services-
Administration

DC4-698A (Revised 6/11/08)          Incorporated by Reference in Rule 33-402.101, F.A.C.



**DEPARTMENT OF CORRECTIONS**
**OFFICE OF HEALTH SERVICES**
**HEAD TRAUMA PROTOCOL**
NOTE: ALL PROTOCOLS COMPLETED BY LPNS MUST BE REVIEWED AND COSIGNED BY A RN OR CLINICIAN.

| SUBJECTIVE: Date: 01/25/18  Time: 0500  Age: 37  ☐ Sick Call  ☑ EMID |
| --- |

Allergies: NKDA
Current Medication/s: Zoloft 100 mg BID
Last Tetanus Toxoid:
Chief Complaint:
Mechanism of Injury (MOI): ☐ Blunt head trauma → head was hit with:
☐ Penetrating head trauma → penetrating object was:
☑ Fall → Distance of fall: 1½  Cause of fall: attempted hanging
☐ Other:
Date and time of injury: 01/25/18  Pain Level: ☐ 0 ☐ 1 ☐ 2 ☐ 3 ☑ 4 ☐ 5 ☐ 6 ☐ 7 ☐ 8 ☑ 9 ☐ 10
Was injury witnessed? ☑ No ☐ Yes, by:
Current symptoms: ☑ Headache ☐ Nausea ☐ Vomiting ☐ Dizziness ☐ Blurred or double vision ☐ Poor coordination
☐ Slurred speech ☐ Other/s:
Other injuries:

| OBJECTIVE: Temp: 99.1  Pulse: 97  Resp: 18  Blood Pressure: 107/109  O2 sat: 95 %  Weight: 150# |
| --- |

☐ Maintain patent airway.  Blood sugar: 95  Time 0510 (all patients).
NOTE: Head injuries frequently have concurrent cervical spinal cord injuries due to either the neck "snapping" forward or backwards when the head is hit with an object, or from the impact of the patient falling after being hit in the head.
Location of injury: R eyebrow
Appearance of head wound: ☐ Ecchymotic area ☑ Hematoma ☐ Abrasion ☑ Laceration ☐ Depressed area on skull
**NOTE:** If patient has abrasion/laceration, also use "Abrasion/Laceration Protocol," DC4-683V to document the injury.
Bleeding at this time: ☐ None noted ☑ Oozing / Minimal ☐ Moderate ☐ Severe ☐ Pulsing spurt
Loss of consciousness on scene? ☐ No ☑ Yes → for how long? couple seconds
LOC on arrival: ☑ A&O x3 ☐ Confused → disoriented to: ☐ person ☐ place ☐ time ☐ Lethargic ☐ Stuporous
☐ Comatose
Does patient remember accident? ☐ No ☑ Yes
If patient walked in, gait was: ☐ N/A ☑ Normal ☐ Abnormal → Describe:
Behavior: ☑ Cooperative ☐ Asking repetitive questions ☐ Restless/Agitated ☐ Combative ☐ Seizure activity
Pupils PERRLA: ☐ No ☑ Yes → Describe:
Drainage (clear, serosanguinous, bloody) from ears or nose? ☑ No ☐ Yes → Describe:
Grips equal and strong: ☐ No ☑ Yes → Describe:
ROM: ☑ Full ROM ☐ Decreased ROM in → ☐ LUE ☐ RUE ☐ LLE ☐ RLE
Bruising noted around the eyes (raccoon eyes) or behind the ears: ☑ No ☐ Yes → Describe:
Calculate GCS and RTS using GCS / RTS tables on PAGE 2. Time: 0500 Initial GCS _5_  Initial RTS _____

| FINDINGS REQUIRING IMMEDIATE CLINICIAN NOTIFICATION |
| --- |

☐ Unconscious patient or patient with h/o unconsciousness
☐ Pulse less than 58 or higher than 110 beats per minute
☐ Pulse ox less than 93%
☐ Respirations less than 10 and higher than 24
☐ Blood pressure less than 90/60 and higher than 140/90
☐ Any abnormal findings as listed above.
☐ Arterial bleed (bright red, usually spurts from wound)
☐ Patient is on an anticoagulant
☐ GCS less than 15.
☐ Severe headache

| PLAN |
| --- |

☐ Activate EMS for unconscious patient – If at all possible, leave patient where found and have EMS remove pt from scene.
☐ Activate EMS for uncontrollable bleeding

B. Dalton
LPN
NWFRC

INMATE NAME: Jackson, Antwan
DC#: D15178  RACE: B  SEX: M
DATE OF BIRTH: 9/25/80
INSTITUTION: 175

SIGNATURE AND STAMP/ PRINT of person completing form
RN OR CLINICIAN REVIEWER   B. Blockett RN NWFRC

DC4-683K (Revised 3/7/17)  Page 1 of 2
This form is not to be amended, revised, or altered without approval of the Chief of Health Services Administration.

MED 000230

**DEPARTMENT OF CORRECTIONS**
**OFFICE OF HEALTH SERVICES**
**HEAD TRAUMA PROTOCOL**
**NOTE:  ALL PROTOCOLS COMPLETED BY LPNS MUST BE REVIEWED AND COSIGNED BY A RN OR CLINICIAN.**

☐ Start oxygen at 3L/min/NC for all moderate to severe head trauma patients.
☑ Notify clinician for any patient with h/o unconsciousness or for any abnormal findings as listed above.
Clinician Name: _Conuelo Lin_     Time notified: _0522_
☐ Monitor patient for changes in neurological status and decreased LOC.
☑ For minor – moderate head injury that doesn't need ER evaluation, verify with the clinician whether or not he/she wants patient admitted to the infirmary (around the clock or just at bedtime) for responsiveness checks every 4 hours for the next 48 hours.
☐ Wake patient after the first hour of sleep and then every 4 hours to check on breathing and responsiveness; ask patient's name, age, and current location ("infirmary at Gulf CI") to make sure he/she is not confused.
☐ For minor head injuries: Apply covered ice pack to swelling for 15-20 minutes, repeat in one hour.
☐ Don't give any pain medications without clinician's approval.
☐ Wound care: See "Abrasion/Laceration Protocol," DC4-683V, and document your care on that DC form.

| EDUCATION |
|---|

☐ Pain medication per clinician's order: _____
☐ Inmate instructed to apply covered ice pack to hematoma 3-4 times per day for the next 48 hours.
☐ Inmate instructed re: wound care per "Abrasion/Laceration Protocol," DC4-683V.
☑ Inmate instructed to return to the Medical Department if symptoms return or worsen, or if new symptoms develop - such as a headache that persists, dizziness, memory problems, photophobia, problems with balance, nausea or vomiting, ringing in the ears.

| Table 3.2    Trauma Score [a, b] | | Glasgow Coma Score (GCS) | | |
|---|---|---|---|---|
| | Points/Score | | Points | |
| **Respiratory rate** | | **Eye opening** | | |
| 36/min or above | 2 | Spontaneous | 4 | |
| 25  35/min | 3 | To voice | 3 | |
| 10-24/min | 4 | To pain | 2 | |
| 0-9/min | 1 | None | 1 | |
| None | 0 | **Verbal Response** | | Total GCS |
| **Respiratory Expansion** | | Oriented | 5 | Points   Score |
| Normal | 1 | Confused | 4 | 14-15     5 |
| Shallow | 0 | Inappropriate words | 3 | 11-13     4 |
| Reactive | 0 | Incomprehensible words | 2 | 8-10      3 |
| **Systolic blood pressure** | | None | 1 | 5-7       2 |
| 90 mm Hg or above | 4 | **Motor Response** | | 3-4       1 |
| 70-89 mm Hg | 3 | Obeys command | 6 | |
| 50-69 mm Hg | 2 | Localized pain | 5 | |
| 0-49 mm Hg | 1 | Withdraw (pain) | 4 | |
| No pulse | 0 | Flexion (pain) | 3 | |
| **Capillary return** | | Extension (pain) | 2 | |
| Normal | 2 | None | 1 | |
| Delayed | 1 | **Total:** | 5 | (3-15) |
| None | 0 | | | |

**RTS = GCS + SBP score + RR score**
**16  =  9  +  3     + 4**

An RTS of less than 11 is used to indicate the need for transport to a designated trauma center.

A Coma Score of 13 or higher correlates with a mild brain injury; 9 to 12 is a moderate injury and 8 or less a severe brain injury.

The Revised Trauma Score (RTS) is one of the more common physiologic scores. It uses 3 specific physiological parameters, as follows: (1) Glasgow Coma Scale (GCS), (2) systolic blood pressure (SBP), and (3) respiratory rate (RR).

[a] Advanced Trauma Life Support Guidelines, American College of Surgeons, 1985.  With permission.
[b] Since the outcome can be correlated with initial trauma score, a patient with a trauma score of 12 or less should optimally be managed at a level I or II trauma center.

INMATE NAME: _Jackson, Antwan_
DC#: _D15078_ RACE: _B_ SEX: _M_
DATE OF BIRTH: _9/25/80_
INSTITUTION: _125_

_[signature]_     C. Dalton
                  LPN
                  NWFRC
**SIGNATURE AND STAMP/ PRINT of person completing form**

**RN OR CLINICIAN REVIEWER**

DC4-683K (Revised 3/7/17)                                   Page 2 of 2
**This form is not to be amended, revised, or altered without approval of the Chief of Health Services Administration.**

MED 000231

PR- X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

FLORIDA DEPARTMENT OF CORRECTIONS
OFFICE OF HEALTH SERVICES
ALLEGED SEXUAL BATTERY PROTOCOL
NOTE: ALL PROTOCOLS COMPLETED BY LPNS MUST BE REVIEWED AND COSIGNED BY A RN OR CLINICIAN.

**SUBJECTIVE:** Date: 6/26/18  Time: 0949  Age: 37  ☐ Sick Call  ☑ EMID

Allergies: NKDA

Current Medications: Zoloft

Medical Hx: N/A

Chief Complaint: "SGt Lanear Stated "I want to see your dick""

Date and time of alleged sexual battery: 6/25/18  Am          Greater than 48 hours ago? ☑ No ☐ Yes

Brief description of the incident: "SGt Lanear said I want to see your dick"

Patient has: ☐ Changed clothes ☐ Bathed/showered ☐ Douched ☐ Urinated ☐ Ingested food/drink
☑ N/A since alleged battery

Additional complaints/injuries: blood noted on shirt Pt states His is from the inmates jumping on him.

Pain level: ☑ 0 ☐ 1 ☐ 2 ☐ 3 ☐ 4 ☐ 5 ☐ 6 ☐ 7 ☐ 8 ☐ 9 ☐ 10    Last Tetanus toxoid: _____

Females: LMP: ____N/A____    On birth control: ☑ N/A ☐ No ☐ Yes

**OBJECTIVE:** Temp: 99.6  Pulse: 72  Resp: 18  Blood Pressure: 114 / 72  O2 sat: 97 % Weight: 150

Blood sugar, if diabetic: N/A

Mentation: ☑ Alert & oriented to: ☑ person ☑ place ☑ time ☐ situation ☐ Confused ☐ Lethargic ☐ Agitated
☐ Teary/Crying ☐ Non-verbal

☐ Life-threatening injuries (use appropriate Nursing Protocol): ____N/A____

☐ Non-life-threatening injuries noted:
____N/A____

Other comments:
Pt states No contact was made just statement said. Pt states he did not carry out request so he was moved to a different dorm where he was jumped on by other inmates the next day after placement.

**REFERRAL ALWAYS REQUIRED**
Clinician notified: DR. Cordero                                          Time: _____

**PLAN**
☐ Assess inmate for any life-threatening condition/injuries, notify clinician immediately, and treat accordingly. Use appropriate Nursing Protocol form.
**Leave all other injuries untreated for possible forensic evidence collection and photos unless the injuries are such that failure to treat them would cause deterioration of the inmate's medical condition.**
☐ If nursing staff member is the first to be told about incident, Shift Supervisor (security) or OIC (Officer in charge) will be notified immediately per "Prison Rape: Prevention, Detection, and Response," Procedure 602.053.
☐ If the alleged sexual battery occurred greater than 48 hours prior to the inmate reporting it, contact the OIG (Office of the Inspector General) before you start collecting evidence. Staff from the OIG will interview the inmate to determine whether collection of evidence is indicated.
☐ Inmate notified not to wash themselves (including their hands) or their clothing/bedding until instructed otherwise. Bloody hands should be covered with paper bags - don't cover hands with rubber gloves or plastic garbage bags!
☐ Instruct inmate not to eat or drink anything if assault just occurred and they were made to perform oral sex.

INMATE NAME: Jackson
DC#: D156__    RACE: B    SEX: M
DATE OF BIRTH: 9-25-80
INSTITUTION: ____125____

SIGNATURE AND STAMP/ PRINT of person completing form
A. Pena RN NWFRC

RN or CLINICIAN REVIEWER

DC4-683M (Revised 3/7/17)
This form is not to be amended, revised, or altered without approval of the Chief of Health Services Administration.

Page 1 of 2

MED 000232

**FLORIDA DEPARTMENT OF CORRECTIONS**
**OFFICE OF HEALTH SERVICES**
**ALLEGED SEXUAL BATTERY PROTOCOL**
**NOTE:  ALL PROTOCOLS COMPLETED BY LPNS MUST BE REVIEWED AND COSIGNED BY A RN OR CLINICIAN.**

☐ Request female inmates not to urinate, if at all possible, until rape kit swabs have been obtained.
☐ Collect clothing as instructed in Procedure 602.053 (Section 5).
☐ The Office of the Inspector General will determine if the SART should be activated (via Security).
☐ Complete "Consent and Authorization for Use and Disclosure Inspection and Release of Confidential Information,"
    DC4-711B per "Post Sexual Battery Medical Action," HSB 15.03.36.
☐ Obtain PREA (Prison Rape Elimination Act) number from the OIC.  The PREA number is required to enter the
    Encounter Form into OBIS (Offender Based Information System).
☐ A copy of the sexual battery medical screening report (from the SA kit) should be obtained from the Emergency
    Department when they've finished with the patient.
☐ After care has been completed by SART at the institution, make a mental health referral via "Staff Request/Referral,"
    DC4-529, for the next day.
☐ If alleged perpetrator is known, obtain order from clinician: _____, for the perpetrator to be tested
    for the following: HIV (with required counseling), hepatitis B, hepatitis C, syphilis, gonorrhea, and chlamydia.
☐ Following SART examination review medical record to ascertain which of the following lab tests were collected:
    ☐ HIV                    ☐ Syphilis
    ☐ Hepatitis B            ☐ Gonorrhea
    ☐ Hepatitis C            ☐ Chlamydia
    If any of the above tests weren't performed, get an order from the clinician to obtain them unless results are already
    known (e.g., inmate is +HIV, inmate or perpetrator has +hepatitis B titer, etc.).
☐ T-Dap* 0.5cc IM or Td 0.5cc IM for open wounds as prescribed by clinician.
☐ Prophylaxis medications given at CI per clinician's orders for:  (See "Post Sexual Battery Medical Action," HSB
    15.03.36 for reference)
    ☐ HIV→ Rx: _____   ☐ N/A
    ☐ Hepatitis B→ Rx: _____   ☐ N/A
    ☐ Gonorrhea and Chlamydia → Rx: _____
    ☐ Syphilis → Rx: _____
    ☐ Emergency Contraception → OTC: _____   ☐ N/A

* If inmate has no record or history of receiving the Tdap vaccine (vaccine released in 2005), then Tdap should be given.  If
inmate has a history of receiving the Tdap vaccine, then give the Td vaccine.  At this time, Tdap is licensed for only one
lifetime dose per person.  *Mental Health Referral placed.*

---

| **EDUCATION** |
|---|

☐ Inmate instructed on the reason for SART encounter.
☐ Inmate educated on the types of STD tests that were done.
☐ Inmate educated on symptoms to watch for with the above listed STDs.
☐ Inmate instructed on the need for repeat lab work (determined by what prophylaxis Rx was given).
    ☐ At 4 weeks, 3 months, and 1 year: ☐ HIV  ☐ Hepatitis B  ☐ Hepatitis C
    ☐ At 3 months: ☐ Syphilis
    ☐ At 2 weeks: ☐ Gonorrhea  ☐ Chlamydia
☐ Inmate instructed to take all medication/s until prescription/s is completely gone.
☐ Inmate instructed to keep all medical and behavioral health follow-up appointments.
☐ Inmate advised to return to Medical for onset of new symptoms or to Mental Health for counseling as needed.
☐ Inmate offered mailing address and/or telephone numbers to local community support group organizations where
    available.
☐ Other: _____

INMATE NAME: Jackson, Arthur
DC#: D15678   RACE: B   SEX: M/F
DATE OF BIRTH: 9·25·80
INSTITUTION: 125

SIGNATURE AND STAMP/ PRINT of person completing form

_A. Peters, RN_
_NWFRC_
RN or CLINICIAN REVIEWER

DC4-683M (Revised 3/7/17)                                                                    Page 2 of 2
This form is not to be amended, revised, or altered without approval of the Chief of Health Services Administration.

MED 000233

**FLORIDA DEPARTMENT OF CORRECTIONS**
**COVER SHEET FOR INPATIENT RECORD**

| NAME LAST Jackson | FIRST Antwan | MIDDLE | DOC NO. D15678 | ROOM NO. V 21045 | HOSPITAL NO. 125 | SERVICE MH |
|---|---|---|---|---|---|---|

| RECEIVED FROM K Dorm | SSAN 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 | HOW ADMITTED ambulatory | DATE PREV. AD. 5/7/18 | DATE ADMITTED 6/25/18 | TIME ADMITTED 0530 |
|---|---|---|---|---|---|

| DOB 9/25/80 | AGE 37 | R/S B/m | PLACE OF BIRTH Savannah, GA | RELIGION N/A | MARITAL STATUS Single | VETERAN No |
|---|---|---|---|---|---|---|

IN CASE OF EMERGENCY NOTIFY:
NAME Beverly Mitchell   RELATIONSHIP Mother   TELEPHONE NUMBER 912.665.4556

ADDRESS STREET 65 4586 Cresthill Ave   CITY Savannah   STATE GA   ZIP 31406

ADMITTING DIAGNOSIS Suicidal ideations, self-reported attempted hanging

PHYSICIAN SIGNATURE (signed) M. Mason Psychologist NWFRC

MEDICAL GRADE S-3

I wish to be admitted to __SHOS__ Hospital and authorize said Hospital and physician assigned to furnish medical and/or surgical treatment, laboratory tests, X-rays, and examinations, as may be deemed advisable during my stay in this hospital.

WITNESS (signed)   C. Dalton LPN NWFRC DATE 6/25/18

SIGNATURE OF PATIENT X (signed)   DATE

DISCHARGE DIAGNOSIS:   CODE NO.

SURGICAL PROCEDURE AND DATES:
N/A

COMPLICATIONS (INCLUDING INFECTIONS)
N/A   UNITS OF BLOOD

DISCHARGE DATE 6/26/18

NO. OF DAYS 1 day

☐ RECOVERED   ☐ NOT TREATED
☐ IMPROVED ✓   ☐ DIED
☐ UNIMPROVED

M. Mason Psychologist NWFRC
(signed)
ATTENDING PHYSICIAN (SIGNATURE)

DC4-713A (Revised 7/28/17)  This form is not to be amended, revised, or altered without approval of the Chief of Health Services Administration.

MED 000756

# FLORIDA DEPARTMENT OF CORRECTIONS
## INPATIENT HISTORY/PHYSICAL

PATIENT __Jackson, Antwan__     NUMBER __D15078__

## HISTORY

Chief Complaint: __Suicidal ideations__

History of Present Illness: __MH use for secondary gain__

Past Medical History:
__Depression on Zoloft__

## PHYSICAL EXAMINATION

Head and Neck: __bruise w small superficial laceration L+ forehead vertical__

DENT: __PERLA, CONI__

Chest and Breast: __Symmetric, reln pain L+ side rib cage__

Heart: __RM, no bruit__

Lungs: __CTA x², no SOB__

Rectal: __∅__

Abdomen: __BS+ soft__

Genitalia: __∅__

Bones and Joints: __Intact ROM__

Extremities: __Symmetric, JOFL__

Neuro: __AAO3, CN II — XII intact__

Impression Diagnosis: __See Mental Health note__

Date: __6-25-18__        Physician: __[signature]__    __6-25-18__

A. Cordero
M.D. Physical Health
NWFRC

713C (Revised 3/17/15)

This form is not to be amended, revised, or altered without approval of the Director of Health Services Administration.

MED 000757

**FLORIDA DEPARTMENT OF CORRECTIONS**
**OFFICE OF HEALTH SERVICES**
**MENTAL HEALTH EMERGENCY PROTOCOL**

| **SUBJECTIVE:** Date: 1/25/18 Time: 0500 Age: 3-7 ☐ Sick Call ☑ EMID |
|---|

Allergies: NKDA

Current Medication/s: Zoloft 100mg BID

Reported Problem: Suicidal ideations

History of Self-Injury? ☐ No ☑ Yes → Describe: _____ When?/ Last episode? _____
History of Violence? ☑ No ☐ Yes → Describe: _____ When?/ Last episode? _____

| **OBJECTIVE:** Temp: 99.1° Pulse: 97 Resp: 18 Blood Pressure: 101/69 O2 sat: 95 % Weight: 150 |
|---|

If patient is a diabetic, blood sugar level: _____
3 previous weights w/dates

Appearance: ☐ Well groomed ☑ Somewhat disheveled ☐ Other/Comments: _____

**NOTE: CHECK ALL THAT APPLY FOR THE FOLLOWING:**

Current behavior:
☐ Withdrawn   ☐ Cursing
☑ Quiet   ☐ Threatening
☐ Anxious   ☐ Assaultive
☐ Agitated   ☐ Self-injurious
☐ Pacing   ☐ Homicidal

☐ Non-verbal   ☐ Other:

Oriented to: ☑ Person ☑ Place ☑ Time   Indicate any inappropriate response/s: _____

Memory: Recent: What is your housing location? K1202
Remote: What was your previous institution? Wakulla

Mood as reported:
☐ Cheerful   ☑ Depressed
☐ Anxious   ☐ Hopeless
☐ Tense   ☐ Angry
☐ Fearful   ☐ Other:

Affect as observed:
☐ Normal   ☐ Sullen
☐ Cheerful   ☐ Tense
☐ Blunted   ☐ Anxious
☐ Flat   ☑ Depressed
☐ Tearful   ☐ Angry
☐ Labile (changing)   ☐ Hostile
☐ Other:

Thought process:
☑ Well organized   ☐ Poor concentration
☑ Coherent   ☐ Other:
☐ Accelerated speech w/abrupt changes from topic to topic

Perception: Inmate claims to hear voices or sounds, which others cannot hear? ☐ No ☑ Yes → Describe:
Sometimes
Inmate claims to see visions of things that others cannot see? ☑ No ☐ Yes → Describe:

Thought content: Is inmate experiencing delusions (reflects false personal beliefs)? ☑ No ☐ Yes → Describe:

Self-injury: Ideas? ☐ No ☑ Yes → Describe: attempted hanging
Threats? ☐ No ☑ Yes → Describe: homicidal thoughts
Plan? ☐ No ☑ Yes → Describe: kill myself first

Vegetative Function: Appetite (recent change)? ☐ No ☑ Yes ☐ Increase ☑ Decrease
Difficulty sleeping? ☑ No ☐ Yes Average hours of sleep at night: _____

C. Dalton
LPN
NWFRC

INMATE NAME: Jackson, Antwan
DC#: D12018 RACE: B SEX: M
DATE OF BIRTH: 9/28/80
INSTITUTION: 125

_C. Dalton_
SIGNATURE AND STAMP/ PRINT

DC4-683A (Revised 6/6/18)                    Page 1 of 2
This form is not to be amended, revised, or altered without approval of the Chief of Health Services Administration.

MED 000758

**FLORIDA DEPARTMENT OF CORRECTIONS**
**OFFICE OF HEALTH SERVICES**
**MENTAL HEALTH EMERGENCY PROTOCOL**

Musculoskeletal Assessment:
☑ Moves all extremities
☐ Limitation of motion – describe: _____

_____

☐ Prostheses – type: _____
Skin Assessment:
**Mark areas on diagram with letter**
☐ Intact – no problems noted
☐ Ecchymosis (E)
☐ Hematoma (H)
☐ Abrasion (A)
☐ Skin Tear (T)
☑ Laceration (L)

Medical Hx: ☐ Cardiovascular
Dx:
_____   ☐ Respiratory  Dx: _____
☐ Neurological  Dx: _____   ☐ Gastrointestinal  Dx: _____
☐ Diabetes ☐ IDDM ☐ NIDDM
How long ago was last meal? _____
Type of last insulin received and when? _____
☐ Head injury/seizure Dx: _____
☐ Substance abuse:  What, and last
used?
☐ Hearing
→Dx:
☐ Vision →Dx: _____

Additional Comments:
Bump c̄ pinpoint laceration to Ⓛ eyebrow
_____
_____
_____

**FINDINGS REQUIRING IMMEDIATE CLINICIAN NOTIFICATION**
☑ Assessment has determined that there may be risk of injury to self or others
☐ Assessment reflects change in mental status related to medical condition (examples; fever, aphasia, confusion,
hyperglycemia)
☐ Other: _____

**PLAN**
☐ Inmate able to return to his/her dorm
☐ Clinician contacted:  Dr. Consuelo Isn               Time: 0522
☑ Inmate to be placed in infirmary isolation management room or infirmary to prevent self-injury and to provide protection
and observation
☑ Inmate observed continuously until placement in IMR or OC
☑ Completed "Staff Request/Referral to Mental Health", DC4-529
☐ Other: _____

**EDUCATION**
☑ Inmate instructed to return if symptoms continue, become worse, or if any new symptoms develop.

C. Dalton
LPN
NWFRC

INMATE NAME: Jackson, Antwan
DC#: D15678  RACE: B  SEX: M
DATE OF BIRTH: 9/28/00
INSTITUTION: 125

_C. Dalton_
SIGNATURE AND STAMP/ PRINT

Page 2 of 2

DC4-683A (Revised 6/6/18)   **This form is not to be amended, revised, or altered without approval of the Chief of Health Services Administration.**

| SENSORY PERCEPTION | MOISTURE | ACTIVITY | MOBILITY | NUTRITION | FRICTION & SHEAR |
|---|---|---|---|---|---|
| ≈ Completely limited<br>2 = Very limited<br>3 = Slightly limited<br>4 = No impairment | 1 = Constantly moist<br>2 = Very moist<br>3 = Occasionally moist<br>4 = Rarely moist | 1 = Bedrest<br>2 = Chairfast<br>3 = Walks occasionally<br>4 = Walks frequently | 1 = Completely immobile<br>2 = Very limited<br>3 = Slightly limited<br>4 = No limitations | 1 = Very poor<br>2 = Probably inadequate<br>3 = Adequate<br>4 = Excellent | 1 = Problem<br>2 = Potential problem<br>3 = No apparent problem |
| Score: | Score: 4 | Score: 4 | Score: 4 | Score: 4 | Score: 3 |

Total Score: 73   Nurse's Initials:

Score: 15-18 At Risk;    13-14 Moderate Risk;    10-12 High Risk;    Less Ten or Equal to 9 Very High Risk

If total score is 18 or less, patient is at risk for developing a pressure ulcer. ICN/SRNS notified: _____

Copyright. Barbara Braden and Nancy Bergstrom, 1988. Reprinted with permission.

**RMC ONLY:** Braden Score 18 or less, add patient to form DC4-0067

**PHYSICAL FINDINGS / MARKINGS** (Use line # to indicate area on body):

1. Contusions
2. Incisions
3. Abrasions
4. Lacerations
5. Rashes
6. Severe dryness
7. Scars
8. Lesions

9. Abnormal color
10. Tattoos
11. Body piercing
12. Skin tear /Duoderm /Opsite
13. Healed pressure ulcer or flap
14. Pressure ulcer:
   Stage: _____
   Size: _____

*REVIEW OF SYSTEMS / PATIENT EVALUATION* (check all that apply)

**EENT**

**EYES** (check all that apply)
Vision impaired: ☐ Blurry vision  ☐ Double vision  ☐ Color blind  ☐ Blind
PERRLA ☑ Yes  ☐ No → If unequal, specify:            Response: ☑ Brisk  ☐ Sluggish  ☐ No response
☐ Itching  ☐ Pain  ☐ Sclera pink/red  ☐ Drainage → Color:            Amount:

**EARS** (check all that apply)
Hearing impaired: ☐ Yes  ☑ No →  ☐ HOH  ☐ Deaf
☐ Tinnitus  ☐ Dizziness / Vertigo  ☐ Problem with balance  ☐ Pain  ☐ Drainage → Color:

**Nose** (check all that apply)
☐ Congestion ☐ Rhinorrhea → Color:            ☐ Sinus problems  ☐ Nosebleeds → frequency:

**Mouth** (check all that apply)
☐ Bleeding gums  ☐ Lesions  ☐ Pain  ☐ Decreased sense of taste  ☐ Last dental exam:

**Throat / Neck** (check all that apply)
☐ Sore throat  ☐ Hoarseness  ☐ Swollen glands  ☐ Dysphagia  ☐ Stiff neck (unable to touch chin to chest)
Additional comments:

**NEUROLOGICAL**

Speech: ☑ Clear  ☐ Slurred  ☐ Aphasic  ☐ Dysphasic  ☐ Incoherent
Level of consciousness: ☑ Alert  ☐ Responsive  ☐ Lethargic  ☐ Somnolent  ☐ Comatose
Oriented to: ☑ Person  ☑ Place  ☐ Time
Behavior: ☑ Cooperative  ☐ Restless  ☐ Agitated  ☐ Confused  ☐ Easily distracted  ☐ Unable to focus
☐ Nervous  ☐ Tremulous  ☐ Fearful  ☐ Tearful  ☐ Guarded  ☐ Angry
☐ Combative  ☐ Threatening  ☐ Assaultive  ☐ Resistant
☐ Inappropriate behavior or response:
Grips equal and strong: ☑ Yes  ☐ No → _____
Foot pushes equal and strong: ☑ Yes  ☐ No → _____

INMATE JACKSON, ANTWAN J.
DC #: ___ B/M  DOB  09/25/1980 (37)
DATE O
INSTITI
DC4-73

DATE: 6/25/18

Page 3 of 5

This form is not to be amended, revised, or altered without approval of the Director of Health Services Administration.

**RESPIRATORY**

☐ Night sweats  ☐ Hemoptysis
Chest appearance: ☐ Symmetrical  ☐ Retraction  ☐ Deformities

| AUSCULTATION | Left | Right |
|---|---|---|
| Clear | ☑ | ☐ |
| Diminished | ☐ | ☐ |
| Rales | ☐ | ☐ |
| Rhonchi | ☐ | ☐ |
| Wheezes | ☐ | ☐ |

☐ Chest tube  ☐ Trach  ☐ ET tube  ☐ Other: _____
☐ Ventilator

**CARDIOVASCULAR**

Skin condition: ☑ Warm  ☐ Cool  ☐ Dry  ☐ Diaphoretic
Mucous membrane color: ☑ Pink  ☐ Pale  ☐ Dusky / Cyanotic  ☐ Other: _____
Apical heart rate: 91 /min.  ☑ Regular  ☐ Irregular
Radial pulse: ☑ Regular  ☐ Irregular
Pedal pulses: ☑ Present  ☐ R absent  ☐ L absent
Edema: ☑ None  ☐ R arm  ☐ L arm  ☐ R leg  ☐ L leg  ☐ Pitting  ☐ Non-pitting
☐ Pacemaker  Date inserted: _____  Type: _____
Current anticoagulant use: ☐ Yes  ☐ No  Excessive or unexplained bruising: ☐ Yes  ☐ No

**SKIN – EXTREMITIES – MUSCULOSKELETAL**

Skin tone: ☑ Firm  ☐ Flaccid
History of DVT: ☐ Yes  ☐ No → when: _____  Homans' sign present: ☐ Yes  ☐ No → ☐ L  ☐ R
Extremities: Tingling: ☐ Yes  ☐ No  Weakness: ☐ Yes  ☐ No  Deformity: ☐ Yes  ☐ No
Contractures: ☐ Yes  ☐ No
Joints: Pain: ☐ Yes  ☐ No  Stiffness: ☐ Yes  ☐ No  Joint replacement: ☐ Yes  ☐ No
If "Yes" to any of the above indicators, describe/location: _____
ROM: ☑ WNL  If problem with ROM, note location / range:

**GASTROINTESTINAL – NUTRITION**

Special Diet: _CSU_  Supplement: _____
Appetite: ☐ Good  ☐ Poor  ☑ Recent change: _decreased_
Unplanned weight loss (10-15 lbs) in the last 6 months? ☐ Yes  ☑ No → _____ lbs.
Difficulty chewing or swallowing: ☐ Yes  ☑ No  Does patient have: ☐ mouth/gum/tooth pain
Has patient had nausea, vomiting, or diarrhea daily for 3 days pre-admission? ☐ Yes  ☐ No
BOWEL SOUNDS: _X4 quds_
Patient has a: ☐ N/G tube  ☐ PEG tube  ☐ Jejunostomy tube  ☐ Gastrostomy tube  ☐ N/A
Type of tube feeding: _____  Amount: _____  Frequency: _____
Abdomen: ☑ Soft  ☐ Tender  ☐ Distended
Bowel sounds: ☑ Present (+)  ☐ Absent (-) → _____
Last BM: Date _____  Color _____
Usual bowel pattern: _____
Current GI problems/complaints: ☐ Diarrhea  ☐ Constipation  ☐ Rectal bleeding  ☐ Incontinence
☐ Hemorrhoids  ☐ Heartburn  ☐ Jaundice
Patient has a: ☐ Colostomy  ☐ Ileostomy  ☐ N/A

**GENITOURINARY**

Color of urine: _yellow_  ?Foul odor: ☐ Yes  ☑ No
Current symptoms/complaints: ☐ Frequency  ☐ Urgency  ☐ Burning  ☐ Nocturia  ☐ Incontinence  ☐ Retention
☐ Anuria  ☐ Difficulty starting  ☐ Flank pain  ☐ Denies symptoms/complaints
Patient has a history of: ☐ Calculi  ☐ UTI(s)  ☐ Dialysis
Patient has a: ☐ Foley catheter: Date inserted: _____  ☐ Condom catheter: Date inserted: _____
☐ Urostomy: Date inserted: _____

INM 0-D15678 TM 59 09/01/06
DC# JACKSON, ANTWAN J.
DAT B/M DOB 09/25/1980(37)
INS1
DC4
DATE: 6/25/18

Page 4 of 5

This form is not to be amended, revised, or altered without approval of the Director of Health Services Administration.

**FLORIDA DEPARTMENT OF CORRECTIONS**
**INFIRMARY PROGRESS RECORD**

Institution: __NWFRC -125__

| Date/Time | Discipline (use codes)* | Comments: This is patient's (2) Day of SHOS |
|---|---|---|
| | | ( ) Post use of force evaluation   ( ) MHISE   ( ) MHIFU   ( ) CE BRA Initiated<br>( ) RMHD approved 7 days SHOS extension   ( ) Patient refused SHOS counseling<br>( ) Attempt made to contact RMHD for approval of 7th day SHOS extension. |
| 6/26/18<br>0840 | Y | **S: DAILY EVALUATION:** Underlying reason for admission: _Suicidal Ideation._ |
| | | _Reported by im that he attempted to hang himself_ |
| | | Patient's statement today: _"Same as yesterday"_ |
| | | _"I'm trying to get to CSU"_ |
| | | **O: Mental Status Exam:** (Circle all that apply) |
| | | **ORIENTATION:** (Time)   Person   (Place)   (Situation) |
| | | **APPEARANCE:** Adequately Groomed   Disheveled   Other |
| | | **BEHAVIOR:** Hostile   Withdrawn   Uncooperative   (Cooperative) Unresponsive   Demanding |
| | | Psycho-Motor Agitation   Retardation Alert |
| | | **MOOD:** (Euthymic)   Elated   Depressed   Anxious   Angry   Other: |
| | | **AFFECT:** Flat   Constricted   Restricted   (Congruent)/Incongruent   Blunted |
| | | **PERCEPTION:** Hallucinations: Auditory   Visual   Other:   (No Distortions) |
| | | **SHORT TERM MEMORY:** (Intact)   Impaired   **REMOTE MEMORY:** (Intact)   Impaired |
| | | **THOUGHT PROCESS/CONTENT:** (Logical)   (Coherent)   Goal Directed   Tangential |
| | | Confused   Obsessive   Loose Associations: |
| | | **DELUSIONS:** Persecutory   Paranoid   Grandiose   Reference |
| | | **SUICIDAL IDEATIONS STATED:** _denied_ |
| | | **HOMOCIDAL IDEATIONS STATED:** _denied_ |
| | | **SPEECH:** Pressured   Accelerated   (Clear)   Mute   Slurred |
| | | **VEGATATIVE FUNCTIONS:** Sleeps _WNL_/24 hours   Eats: _3_/3 meals |
| | | **ENERGY LEVEL:** Reduced   High   (Normal) |
| | | **ENVIORNMENTAL CONCERNS IF ANY:** |
| | | **OTHER:** |

Inmate Name _Jackson, Antwan_

DC# _D15678_   Race/Sex _BM_

Date of Birth _9/25/1980_

Institution: NWFRC _-125_

| *Codes: | | |
|---|---|---|
| M | = | MD/CA/ARNP |
| P | = | Psychiatrist |
| Y | = | Psychology |
| N | = | Nursing |
| D | = | Dental |

This form is not to be amended, revised, or altered without approval
of the Chief of Health Services Administration.

INFIRMARY PROGRESS RECORD
DC4-714A (Revised 7/19/17) (Page 1 of 2)

MED 000783

**FLORIDA DEPARTMENT OF CORRECTIONS**
**INFIRMARY PROGRESS RECORD Continued**

Institution: NWFRC  -125

| Date/Time | Discipline (use codes)* | Comments |
|---|---|---|
| 6/26/18 | Y | A: MEDICATION PRESCRIBED (if applicable): Zoloft |
| 0840 | | Medication Changes (if applicable): Medication Compliant: (Yes) NO |
| | | COUNSELING PROVIDED IN RELATION TO ADMISSION & CURRENT CONCERNS: |
| | | active Listening, Socratic Questioning. |
| | | |
| | | PATIENT'S RESPONSE TO COUNSELING INTERVENTIONS: Good. Pt Expressed A desire to cont w/his PREA allegations And work w/Security to resolve this issue. |
| | | RESOURCES/PROBLEM SOLVING SKILLS IDENTIFIED: Pt Expressed Future oriented thinking and problem Solving ABility. |
| | | ASSESSED CURRENT RISK FOR SUICIDE/SELF HARM: High    Moderate    (Low) |
| | | PATIENT'S STATED HOPE FOR FUTURE: Pt Expressed A desire to Go to Wakulla & Get treatment. |
| | | DIAGNOSIS: F32.9, F60.7  (✓) Current ( ) Provisional ( ) n/a No Diagnosis at this time |
| | | SGRADE:    S3    (✓) Current ( ) Changed |
| | | P: ( ) Continue SHOS status and daily counseling |
| | | (✓) Discharge and followed up by 7 days post SHOS evaluation/ case management |
| | | By 4th day, patient evaluated to determine transfer to: ( ) CSU    ( ) No transfer at this time |
| | | ( ) Regional MH Director called by day 7th day    ( ) Transfer pending for CSU |
| | | Signature AND Stamp:            M. Mason Psychologist NWFRC |
| | | A. Peters, RN    10/26/18 0900 NWFRC |

Inmate Name Jackson, Antwan

DC# D15678    Race/Sex B/m

Date of Birth 9/25/80

Institution: NWFRC -125

*Codes:
M = MD/CA/ARNP
P = Psychiatrist
Y = Psychology
N = Nursing
D = Dental

This form is not to be amended, revised, or altered without approval of the Chief of Health Services Administration.

INFIRMARY PROGRESS RECORD
DC4-714A (Revised 7/19/17) (Page 2 of 2)

**FLORIDA DEPARTMENT OF CORRECTIONS**
**INFIRMARY PROGRESS RECORD**

Institution: _NWFRC Annex_

| Date/Time | Discipline (use codes)* | Comments:          This is patient's ( / ) Day of SHOS |
|---|---|---|
| | | ( ) Post use of force evaluation      ( / ) MHISE      ( ) MHIFU      ( ) CE BRA Initiated |
| | | ( ) RMHD approved 7 days SHOS extension      ( ) Patient refused SHOS counseling |
| | | ( ) Attempt made to contact RMHD for approval of 7th day SHOS extension. |
| | Y | S: DAILY EVALUATION: Underlying reason for admission: _Suicidal ideations_ |
| 06/25/18 0658 | | _self reported attempted hanging_ |
| | | Patient's statement today: "_I do got a psych emergency, they moved me to another quad and some inmates jumped on me so I_ |
| | | O: Mental Status Exam: (Circle all that apply) _declared a psych emergency._ |
| | | ORIENTATION: (Time)  (Person)  (Place)  (Situation) |
| | | APPEARANCE: (Adequately Groomed)  Disheveled  Other |
| | | BEHAVIOR: Hostile  Withdrawn  Uncooperative (Cooperative) Unresponsive  Demanding |
| | | Psycho-Motor Agitation  Retardation  Alert |
| | | MOOD: Euthymic  Elated  Depressed  Anxious  Angry  Other: _Irritable_ |
| | | AFFECT: Flat  Constricted  Restricted (Congruent)/Incongruent  Blunted |
| | | PERCEPTION: Hallucinations: Auditory  Visual  Other: (No Distortions) |
| | | SHORT TERM MEMORY: (Intact) Impaired    REMOTE MEMORY: (Intact) Impaired |
| | | THOUGHT PROCESS/CONTENT: Logical (Coherent)  Goal Directed  Tangential |
| | | Confused  Obsessive  Loose Associations: |
| | | DELUSIONS: Persecutory  Paranoid  Grandiose  Reference _None_ |
| | | SUICIDAL IDEATIONS STATED: "_I kind of like suicidal a little._" |
| | | HOMICIDAL IDEATIONS STATED: _None_ |
| | | SPEECH: Pressured  Accelerated (Clear) Mute  Slurred |
| | | VEGETATIVE FUNCTIONS: Sleeps _2_ /24 hours  Eats: _2/3_ meals |
| | | ENERGY LEVEL: Reduced  High (Normal) |
| | | ENVIRONMENTAL CONCERNS IF ANY: _Situational stress/Environmental stress_ |
| | | OTHER: _None_ |

Inmate Name _Jackson, Antwan_

DC# _D15678_   Race/Sex _B/M_

Date of Birth _09/25/1980_

Institution: _NWFRC Annex_

*Codes:   M = MD/CA/ARNP
P = Psychiatrist
Y = Psychology
N = Nursing
D = Dental

This form is not to be amended, revised, or altered without approval
Of the Deputy Assistant Secretary for Health Services Administration

INFIRMARY PROGRESS RECORD
DC4-714A (6/99) (Page 1 of 2)

MED 000787

**FLORIDA DEPARTMENT OF CORRECTIONS**
**INFIRMARY PROGRESS RECORD Continued**

Institution: _WWFRC Annex_

| Date/Time | Discipline (use codes)* | Comments |
|---|---|---|
| | Y | **A: MEDICATION PRESCRIBED (if applicable):** |
| 08/25/18 0658 | | Medication Changes (if applicable): Medication Compliant: Yes   NO |
| | | **COUNSELING PROVIDED IN RELATION TO ADMISSION & CURRENT CONCERNS:** The patient discussed psychoeducation and utilizing institutional resources |
| | | **PATIENT'S RESPONSE TO COUNSELING INTERVENTIONS:** The patient amenable to discussing alternatives to negative decisions |
| | | **RESOURCES/PROBLEM SOLVING SKILLS IDENTIFIED:** Discussed positive decision making (antecedents, behavior, consequences) |
| | | **ASSSESSED CURRENT RISK FOR SUICIDE/SELF HARM:** High   Moderate   (Low) |
| | | **PATIENT'S STATED HOPE FOR FUTURE:** "I don't know, I think some programs may help me, maybe another dorm or another camp. |
| | | **DIAGNOSIS:** F32.9 F60.2 (X) Current ( ) Provisional ( ) n/a No Diagnosis at this time |
| | | **SGRADE:** (X) Current ( ) Changed |
| | | **P:** (X) Continue SHOS status and daily counseling        ( ) Regional MH Director called by day 7th day |
| | | By 4th day, patient evaluated to determine transfer to ( ) CSU   ( ) No transfer at this time |
| | | ( ) Discharge and follow up by 7 days post SHOS evaluation/ case management |
| | | ( ) Transfer pending for ( ) CSU    ) TCU |
| | | **Signature/Stamp:**   Reginald Jones, LMHC  _[signature]_   MHP   NWFRC |

Inmate Name _Jackson, Antwan_

DC# _D15678_   Race/Sex _B/m_

Date of Birth _05/25/1980_

Institution _NWFRC Annex_

*Codes:

| | | |
|---|---|---|
| M | = | MD/CA/ARNP |
| P | = | Psychiatrist |
| Y | = | Psychology |
| N | = | Nursing |
| D | = | Dental |

This form is not to be amended, revised, or altered without approval of the Deputy Assistant Secretary for Health Services Administration

**INFIRMARY PROGRESS RECORD**
DC4-714A (6/99) (Page 2 of 2)