## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## PANAMA CITY DIVISION

ANTWAN JOVAN JACKSON,

      Plaintiff,

v.                                   Case No.  5:19-cv-114-MCR/MJF

SERGEANT LANIER, *et al*.,

      Defendants.

_____/

## REPORT AND RECOMMENDATION

This prisoner civil rights case is before the court upon Defendant Nurse Shively's motion to dismiss Plaintiff's claims against her for failure to state a claim upon which relief can be granted. Doc. 62. Plaintiff opposes the motion. Doc. 77. For the reasons set forth below, the undersigned recommends that Shively's motion to dismiss be granted in part and denied in part.[1]

### I. BACKGROUND AND PROCEDURAL HISTORY

Jackson is an inmate of the Florida Department of Corrections currently confined at Lake Correctional Institution ("Lake CI") in Clermont, Florida. Jackson

---

[1] The District Court referred this case to the undersigned to address preliminary matters and to make recommendations regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2(C); *see also* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

initiated this lawsuit on April 19, 2019, by filing a civil rights complaint under 42 U.S.C. § 1983. Doc. 1. Jackson's third amended complaint is the operative complaint. Doc. 36.

Jackson's third amended complaint names as Defendants three prison officials and a nurse at the Northwest Florida Reception Center ("NWFRC")—Sergeant Lanier, Sergeant Plybon, Officer Justice, and Nurse Shively. Doc. 36 at 2. With respect to Nurse Shively, Jackson claims that she violated his rights under the Eighth and Fourteenth Amendments on June 25, 2018—during his confinement at NWFRC—when she was deliberately indifferent to his psychological emergency and the substantial risk that he would hang himself. *Id*. at 22, 24-26. Jackson sues Shively in her individual and official capacities. *Id*. at 22. As relief, Jackson seeks compensatory damages, punitive damages, injunctive relief, and "any additional relief this Honorable Court deems just and proper." *Id*.

Nurse Shively moves to dismiss Jackson's complaint with prejudice for failure to state a claim upon which relief can be granted. Doc. 62. Shively asserts nine bases for dismissal: (1) Jackson failed to properly exhaust his administrative remedies; (2) Jackson fails to state a due-process claim under the Fourteenth Amendment because the Eighth Amendment provides an explicit textual source of constitutional protection; (3) Jackson's allegations of state-law violations do not

Page 2 of 44

state a claim for relief under § 1983; (4) Jackson's allegations of treaty violations fail to state a claim for relief under § 1983; (5) Jackson fails to state a plausible official-capacity claim against her; (6) Jackson's request for injunctive relief is moot and, in any event, cannot be granted against her; (7) Jackson's claim for compensatory damages is barred by 42 U.S.C. § 1997e(e); (8) Jackson fails to state a plausible claim for punitive damages because there are no allegations of conduct rising to the punitive level; and (9) Jackson fails to state a plausible claim of medical deliberate indifference under the Eighth Amendment to overcome her entitlement to qualified immunity. Doc. 62; *see also* Doc. 83 (supplemental brief on the issue of whether Shively qualifies to assert qualified immunity).

## II.  ALLEGATIONS OF JACKSON'S THIRD AMENDED COMPLAINT

Jackson's third amended complaint alleges the following facts. On June 23, 2018, while Jackson was confined at the NWFRC, in Wing 1 of K-Dormitory ("Wing 1"), Defendant Sergeant Lanier approached Jackson's cell and stated: "Let me see that long dick since everyone else wants to see it, if not cut the son of a bitch, you got 18 hours." Doc. 36 at 24, ¶ I. Jackson did not comply with Lanier's request. *Id*.

The following morning, on June 24, 2018, Lanier returned to Jackson's cell and commented: "Your time is up so what you go [sic] do," then walked away. *Id*.

At 3:00 p.m., Lanier directed another inmate to pack Jackson's property, and informed Jackson that Captain Jenkins authorized Lanier to move Jackson to Wing 4 of K-Dormitory ("Wing 4"). *Id*. Jackson alleges that Lanier orchestrated the move because he paid inmates in Wing 4 to assault Jackson in retaliation for Jackson refusing to comply with Lanier's "sexual request." *Id*.

At 6:00 p.m. on June 24, 2018, during shift change, Sergeant Lanier directed his relief staff—Defendants Sergeant Plybon and Officer Justice—not to allow Jackson back into Wing 1. Doc. 36 at 24, ¶ I. Fifteen minutes later, at 6:15 p.m., Jackson attempted to exit Wing 4 with his belongings. *Id*. at 25, ¶ II. When Jackson reached the sally port area, he told Plybon that he was declaring a psychological emergency and was in fear for his life. *Id*. Plybon ignored Jackson's declaration and informed Jackson that Lanier advised him not to allow Jackson to return to Wing 1. *Id*. Plybon then told Jackson that he was about to get his ass whipped and to "take it like a man." *Id*. Jackson returned to his cell in Wing 4. *Id*. Jackson's cell door was locked and remained locked until the following morning. *Id*.

At 3:00 a.m., on June 25, 2018, Officer Justice unlocked Jackson's cell door for Jackson to report to the hallway to receive his medication. Doc. 36 at 25, ¶ II. Defendant Shively administered Jackson's medication. *Id*. Jackson told Shively that he had a psychological emergency and he was going to hang himself. *Id*. Shively

responded: "Well hang then." *Id*. Jackson went back to his cell, got a sheet, returned to the "front door," and informed Plybon and Shively that he was going to hang himself. *Id*. at 25-26, ¶ II. Plybon and Shively laughed. *Id*. at 26, ¶ II. Jackson then "tied the sheet to the TV stand and then around [his] neck hanging until the sheet came loose" and dropped him to the floor. *Id*. Plybon, Shively and Justice watched Jackson but made no attempt to intervene. *Id*.

Jackson got up from the floor and went to the "front door." Doc. 36 at 26, ¶ II. Two inmates threatened Jackson, and one of the inmates struck him in the back of the head with a closed fist. *Id*. Jackson went back to his cell. Moments later, one of the same inmates entered Jackson's cell and again threatened him. *Id*. The other inmate entered Jackson's cell and the two punched and kicked Jackson. *Id*. A third inmate joined the assault on Jackson and stated, "This is for Lanier." *Id*. According to Jackson, Sergeant Plybon "was fully aware of what was taking place but did absolutely nothing." *Id*.

Officer Justice was in the officer's station during the assaults, where he had "control over ever[y] door in the dorm and a clear view inside every wing." Doc. 36 at 26, ¶ III. During the assault in Jackson's cell, Jackson attempted to escape, but one of his attackers slammed the cell door closed. *Id*. at 26-27, ¶ III. After Jackson was assaulted, one of his attackers told an inmate in the dayroom to tell Justice to

Page 5 of 44

open Jackson's cell door. *Id*. at 27, ¶ III. Justice immediately opened the cell door, and Jackson and his assailants exited the cell. *Id*. Jackson approached the "front door," and Justice immediately opened it to allow Jackson to exit Wing 4 and enter Wing 1. *Id*.

A few minutes later, Justice allowed one of Jackson's attackers to enter Wing 1. Doc. 36 at 27, ¶ III. That inmate threatened Jackson and attempted to stab him with a homemade knife. *Id*. A few minutes later, Justice allowed another inmate from Wing 4 to enter Wing 1. *Id*. That inmate threatened Jackson, exited Wing 1, returned to Wing 4, and assaulted Jackson. *Id*. At this point, Justice "called in" Jackson's psychological emergency and allowed Jackson to secure himself in the front entrance. *Id*.

Based on the foregoing allegations—as they relate to Shively—Jackson claims that Shively was deliberately indifferent to his serious medical needs, namely, his  psychological emergency, his threat of self-harm, and his attempt at self-harm. Doc. 36 at 28, ¶ IV. Jackson elaborates: "I could have killed myself or could have been killed as a result of her not intervening and following protocol." *Id*.

Jackson alleges that as a result of the incident, he sustained mental, emotional and physical injuries. *Id*. at 10, 28. Jackson's demand for relief does not delineate which injuries were caused by the suicide attempt and which were caused by the

Page 6 of 44

subsequent inmate assaults. *Id*. at 10, 22. The body of Jackson's complaint associates the physical injuries with the inmate assaults. *Id*. at 26, 28. But Jackson's response to the motion to dismiss clarifies that "[h]is suicide attempt resulted in severe neck injuries . . . [and that] [t]he entire incident, as a whole, resulted in mental/emotional injuries." Doc. 77 at 12, ¶ 9.

## III. DISCUSSION

### A.   Jackson Exhausted His Administrative Remedies

Nurse Shively asserts that Jackson's claim against her should be dismissed because Jackson failed to exhaust his administrative remedies concerning her alleged deliberate indifference to his psychological emergency and threat of self-harm. Shively acknowledges that Jackson filed grievances concerning the incident, but argues that the grievances do not satisfy the exhaustion requirement because they either (1) failed to grieve Shively's alleged unconstitutional conduct, or (2) were returned without action as not in compliance with the Florida Department of Corrections inmate grievance procedure. Doc. 62 at 8-12.

Jackson responds that he satisfied the exhaustion requirement by filing a direct grievance to the Office of the Secretary—Grievance Log # 18-6-29038—which described the incident including Shively's misconduct. Doc. 77 at 8-10, ¶ II. That

grievance was denied on the merits because the incident already had been referred to the Office of the Inspector General. *Id.*

### 1. *The PLRA's Exhaustion Requirement*

The Prison Litigation Reform Act ("PLRA") provides in relevant part: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, whether they allege excessive force or some other wrong, and whether they seek injunctive relief, monetary damages, or both. *See Porter v. Nussle*, 534 U.S. 516, 524 (2002).

Exhaustion of available administrative remedies is a mandatory pre-condition to suit. *See Booth v. Churner*, 532 U.S. 731, 739 (2001) ("The 'available' 'remed[y]' must be 'exhausted' *before* a complaint under § 1983 may be entertained.") (emphasis added); *see also Porter*, 534 U.S. at 524-25 ("Beyond doubt, Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.").

Page 8 of 44

"[T]he PLRA exhaustion requirement requires proper exhaustion." *Woodford*

*v. Ngo*, 548 U.S. 81, 93 (2006). The Court explained in *Woodford*:

> Because exhaustion requirements are designed to deal with parties who do not want to exhaust, administrative law creates an incentive for these parties to do what they would otherwise prefer not to do, namely, to give the agency a fair and full opportunity to adjudicate their claims. Administrative law does this by requiring proper exhaustion of administrative remedies, which means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits).

*Id*. at 90 (internal quotation marks and citation omitted).

"To determine 'proper exhaustion' in prisoner civil rights actions, courts must

look to the requirements of the 'prison grievance system.'" *Gipson v. Renninger*,

750 F. App'x 948, 951 (11th Cir. 2018) (quoting *Woodford*, 548 U.S. at 95). In other

words, "[a] prisoner must comply with rules 'defined not by the PLRA, but by the

prison grievance process itself.'" *Gipson*, 750 F. App'x at 951 (quoting *Jones v.

Bock*, 549 U.S. 199, 218 (2007)).

The Florida Department of Corrections ("FDC") provides inmates with a

three-step grievance process for exhausting administrative remedies:

> The grievance procedure applicable to Florida prisoners is set out in § 33-103 of the Florida Administrative Code. Section 33-103 contemplates a three-step sequential grievance procedure: (1) informal grievance; (2) formal grievance; and then (3) administrative appeal. Dimanche, 783 F.3d at 1211. Informal grievances are handled by the staff member responsible for the particular area of the problem at the

> institution; formal grievances are handled by the warden of the institution; and administrative appeals are handled by the Office of the Secretary of the FDOC. See Fla. Admin. Code §§ 33-103.005–103.007. To exhaust these remedies, prisoners ordinarily must complete these steps in order and within the time limits set forth in § 33-103.011, and must either receive a response or wait a certain period of time before proceeding to the next step. See id. § 33-103.011(4).

*Pavao v. Sims*, 679 F. App'x 819, 824 (11th Cir. 2017) (citing *Dimanche v. Brown*, 783 F.3d 1204 (11th Cir. 2015)). The FDC's grievance procedure also provides for "Direct Grievances"—grievances filed directly to the Office of the Secretary—under certain circumstances. *See* Fla. Admin. Code § 33-103.007(6) (eff. Apr. 20, 2014 to Nov. 6, 2018).[2]

## 2.   *Procedure for Ruling on an Exhaustion Defense*

A failure to exhaust administrative remedies is an affirmative defense that the defendant bears the burden of proving. *See Jones*, 549 U.S. at 216 ("We conclude that failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints."); *Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008) (holding that because failure to exhaust administrative remedies is an affirmative defense, the defendant

---

[2] As described above, the incident in this case occurred in June 2018.

bears "the burden of proving that the plaintiff has failed to exhaust his available administrative remedies.").

In *Bryant v. Rich*, 530 F.3d 1368 (11th Cir. 2008), the Eleventh Circuit outlined the procedure district courts should follow when presented with a motion to dismiss for failure to exhaust administrative remedies under the PLRA. The defense of failure to exhaust should be treated as a matter in abatement. *Id.* at 1374. "This means that procedurally the defense is treated 'like a defense for lack of jurisdiction,' although it is not a jurisdictional matter." *Turner*, 541 F.3d at 1082 (quoting *Bryant*, 530 F.3d at 1374). Because exhaustion is a matter in abatement, "it should be raised in a motion to dismiss, or be treated as such if raised in a motion for summary judgment." *Bryant*, 530 F.3d at 1374-75 (citation and internal quotation omitted).

Deciding a motion to dismiss for failure to exhaust administrative remedies involves two steps. *See Turner*, 541 F.3d at 1082. First, the court looks to the factual allegations in the defendant's motion, and those in the plaintiff's response. *See id*. at 1082.  If they conflict, the court accepts the plaintiff's version as true. "If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed." *Id.* at 1082; *see also Bryant*, 530 F.3d at 1373-74.

If the complaint is not subject to dismissal at the first step, where the plaintiff's allegations are assumed to be true, "the court proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion." *Turner*, 541 F.3d at 1082 (*citing Bryant*, 530 F.3d at 1373-74, 1376). "The defendants bear the burden of proving that the plaintiff has failed to exhaust his available administrative remedies." *Turner*, 541 F.3d at 1082. Upon making findings on the disputed issues of fact, the court then decides whether, under those findings, the plaintiff has exhausted his available administrative remedies. *See, e.g., Singleton v. Dep't of Corr.*, 323 F. App'x 783, 785 (11th Cir. 2009) ("A district court may properly consider facts outside of the pleadings to resolve a factual dispute regarding exhaustion where the factual dispute does not decide the merits and the parties have a sufficient opportunity to develop the record." (citing *Bryant*, 530 F.3d at 1376)).

### 3.    *Application of the Turner Procedure*

The factual allegations in Nurse Shively's motion to dismiss do not conflict with the allegations in Jackson's third amended complaint and his response to the motion to dismiss, at least with regard to the steps Jackson took to exhaust his administrative remedies. *See* Doc. 62 and Ex. 2; Doc. 77 & Supp.

There is no dispute that on June 26, 2018, Jackson filed a direct grievance to the Office of the Secretary, Grievance Log #18-6-29038. Doc. 36 at 13; Doc. 62-2 at 4-5; Doc. 77 at 18-19. With regard to Shively's conduct, Jackson stated:

> Once in the hallway I received my meds then told Nurse ___ I had a psych emergency and that I was going to hang myself. She stated "well hang then." Sgt. Plybon then forcefully pushed me back inside the quad. I went to my cell, got a sheet and again told them I was going to hang. They just laughed. I tied the sheet to the TV stand and then around my neck attempting to hang until the sheet came loose and I fell to the floor. The Nurse, Sgt. Plybon and Ofc. Justice witnessed this and did nothing.

Doc. 36 at 13; Doc. 62-2 at 5; Doc. 77 at 19.

Jackson's grievance was received by the Office of the Secretary on July 3, 2018, and denied on July 12, 2018, as follows:

> Your appeal has been reviewed and evaluated. The subject of your grievance was previously referred to the Office of the Inspector General. It is the responsibility of that office to determine the amount and type of inquiry that will be conducted. This inquiry/review may or may not include a personal interview with you. Upon completion of this review, information will be provided to appropriate administrators for final determination and handling.
>
>         . . . .
>
> As this process was initiated prior to the receipt of your appeal, your request for action by this office is denied.

Doc. 62-2 at 3; Doc. 77 at 20.

On June 29, 2018, Jackson submitted another grievance directly to the Office

of the Secretary, Grievance Log #18-6-29291, which stated:

> This is an amendment to the Direct Grievance sent to this office dated 6-26-18. The name of the Nurse involved to which was left out is Nurse Shively.

Doc. 62-2 at 7; Doc. 77 at 21. This grievance was received by the Office of the

Secretary on July 6, 2018, and returned without action on July 17, 2018, as follows:

> Your administrative appeal has been received in non-compliance. This appeal is determined to be a supplement to an appeal, which has already been accepted for review by this office. There is no provision in Chapter 33-103, which allows for supplements and/or amendments to be presented unless they contain relevant and determinative information which was not accessible to or known by the inmate at the time the original appeal was filed. You have not provided sufficient proof of this requirement.

> Note  You currently have no pending appeals with this office.

> Your request for administrative appeal is returned without action.

Doc. 62-2 at 6; Doc. 77 at 22. That is the extent of Jackson's grievances with regard

to Shively's conduct on June 25, 2018.[3]

---

[3] Although Jackson later filed an informal grievance complaining that he was prematurely discharged from the SHOS unit on June 26, 2018, without receiving proper mental health treatment, that grievance did not relate to Shively's alleged deliberate indifference to his initial psychological emergency on June 25, 2018. (*See* Doc. 62-2 at 44; Doc. 77 at 23 (Informal Grievance Log #125-1807-0005)). The same is true of Jackson's subsequent grievances requesting that the OIG preserve evidence and provide him information for purposes of litigation. (*See* Doc. 62-2 at

Page 14 of 44

Shively asserts that Jackson's grievances do not satisfy the exhaustion requirement because he failed to correct his appeal and grievances, "or failed to grieve Shively's alleged unconstitutional conduct." Doc. 62 at 11. Jackson responds that his first direct grievance (Grievance Log #18-6-29038) complied with the FDC's procedural rules, provided officials with all relevant information about Nurse Shively's misconduct, and was addressed by the Secretary's office (as opposed to being returned without action as non-compliant). Doc. 77 at 9. Jackson emphasizes that when he later attempted to supplement his grievance by identifying Shively by name, the Secretary's response acknowledged that his prior direct grievance (Grievance Log #18-6-29038) was accepted for review. *Id*. Jackson asserts that the fact that his direct grievance was denied because the incident already had been referred to the OIG and was under investigation does not diminish the fact that he complied with the prison grievance procedure. *Id*.

"Compliance with prison grievance procedures . . . is all that is required by the PLRA to properly exhaust." *Jones*, 549 U.S. at 219. Jackson's first direct grievance (Grievance Log #18-6-29038) was sufficient exhaustion. It provided all relevant information concerning Shively's alleged deliberate indifference, which is

---

8-11; Doc. 77 at 24-28 (Informal Grievance Log #215-7812-0150, Formal Grievance Log #1809-215-083, and Grievance Appeal Log #18-6-44485)).

all that was required in order to properly exhaust his claim against her. The direct grievance asserted the same facts against Shively as Jackson's third amended complaint, which is sufficient. *See Harvard v. Inch*, 411 F. Supp. 3d 1220, 1244 (N.D. Fla. 2019) ("[A]bsent a stringent requirement in FDC's rules, a standard akin to notice pleading is appropriate when determining whether Plaintiffs' grievances contained sufficient details to exhaust their administrative remedies."); *Goldsmith v. White*, 357 F. Supp. 2d 1336, 1338-40 (N.D. Fla. 2005) (determining that a grievance is sufficient if it provides "enough information to allow prison officials to investigate the inmate's real complaint."). Jackson's first direct grievance provided the FDC with a full and fair opportunity to consider the propriety of Shively's response to Jackson's threat of self-harm.

The fact that Jackson's first direct grievance (Log #18-6-29038) did not identify Shively by name does not alter this conclusion. *See Parzyck v. Prison Health Servs., Inc.*, 627 F.3d 1215, 1218-19 (11th Cir. 2010) ("A prisoner need not name any particular defendant in a grievance in order to properly exhaust his claim."); *see also Jones*, 549 U.S. at 219 (holding that state prisoners' § 1983 actions were not automatically rendered noncompliant with the PLRA's administrative exhaustion requirement by fact that not all defendants named in the complaints had been named in previous administrative grievances; the PLRA did not impose a "name all

defendants" requirement as part of exhaustion, and state corrections department's policy did not contain any provision specifying who must be named in a grievance); *Brown v. Sikes*, 212 F.3d 1205, 1207 (11th Cir. 2000) ("[W]hile § 1997e(a) requires that a prisoner provide as much relevant information as he reasonably can in the administrative grievance process, it does not require that he do more than that.").

Additionally, Jackson's first direct grievance (Log #18-6-29038) was *not* returned without action on procedural grounds. Rather, it was accepted for review and denied because the subject of Jackson's grievance already had been referred to the OIG. The grievance response assured Jackson that upon completion of the OIG's inquiry/review, "information will be provided to appropriate administrators for final determination and handling." Doc. 62-2 at 3; Doc. 77 at 20.[4]

The fact that Jackson's subsequent grievance (Grievance Log #18-6-29291)— which attempted to provide Shively's name—was returned without action does not alter the conclusion that Jackson's first direct grievance (Grievance Log #18-6-29038) sufficiently exhausted his claim against Shively.

---

[4] To the extent the referral to the OIG foreclosed a parallel review through the administrative grievance process, or resulted in the Secretary declining to take action on Jackson's direct administrative grievance, that circumstance would not support a finding that Jackson failed to properly exhaust. Rather, it would support a finding that the administrative grievance process was unavailable to him. *Cf. Ross v. Blake*, 578 U.S. 632, 642-43 (2016).

Defendant Shively has not met her burden of establishing that Jackson failed to properly exhaust his administrative remedies as required by 42 U.S.C. § 1997e(a). Accordingly, her motion to dismiss for lack of proper administrative exhaustion must be denied.

**B.**     **Jackson's Third Amended Complaint Alleges an Eighth Amendment Violation Based on Shively's Deliberate Indifference to a Serious Psychiatric Need and Threat of Self-Harm**

Jackson claims that on June 25, 2018, Shively violated his rights under the Eighth Amendment when she was deliberately indifferent to his psychological emergency and threat to hang himself. Doc. 36 at 22, 24-26. Shively asserts that Jackson's allegations fail to state a plausible claim of medical deliberate indifference. Doc. 62 at 27-32.

**1.**     ***Standard for Addressing Motions to Dismiss***

Rule 12 of the Federal Rules of Civil Procedure authorizes dismissal of a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The mere possibility that the defendant acted unlawfully is insufficient. *Id*., 556 U.S. at 678.

The complaint must include "[f]actual allegations . . . [sufficient] to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555, that is, "across the line from conceivable to plausible." *Id*., 550 U.S. at 570; *see also Iqbal*, 556 U.S. at 678 (reiterating that although Rule 8 of the Federal Rules of Civil Procedure does not require detailed factual allegations, it demands "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."). A complaint also may be dismissed for failure to state a claim "when its allegations, on their face, show that an affirmative defense bars recovery on the claim." *Cottone v. Jenne*, 326 F.3d 1352, 1357 (11th Cir. 2003); *see also Marsh v. Butler Cnty., Ala*., 268 F.3d 1014, 1022 (11th Cir. 2001); *Jones v. Bock*, 549 U.S. at 215 (reiterating that principle).

In considering a motion to dismiss for failure to state a claim, the court accepts all well-pleaded factual allegations in the complaint as true and evaluates all reasonable inferences derived from those facts in the light most favorable to the plaintiff. *See Hunnings v. Texaco, Inc.,* 29 F.3d 1480, 1483 (11th Cir. 1994). Mere "labels and conclusions" are not accepted as true. *Twombly*, 550 U.S. at 555; *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (explaining that on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual

Page 19 of 44

allegation"); *Franklin v. Curry*, 738 F.3d 1246, 1251 (11th Cir. 2013) (holding that courts must follow the Supreme Court's "'two-pronged approach' of first separating out the complaint's conclusory legal allegations and then determining whether the remaining well-pleaded factual allegations, accepted as true, 'plausibly give rise to an entitlement to relief.'" (quoting *Iqbal*, 556 U.S. at 679). Thus, a pleading that offers "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

### 2. *Eighth-Amendment Standard*

"Under the Eighth Amendment, prisoners have a right to receive medical treatment for illness and injuries, which encompasses a right to psychiatric and mental health care, and a right to be protected from self-inflicted injuries, including suicide." *Belcher v. City of Foley, Ala.*, 30 F.3d 1390, 1396 (11th Cir. 1994) (citations omitted). "Prison [officials] who display deliberate indifference to the serious medical and psychiatric needs of a prisoner, or deliberate indifference to a 'strong likelihood' that a prisoner will take his own life, violate the Eighth Amendment and may be liable under section 1983." *Id*. at 1396 (quoting *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976)) (other citations omitted). To hold a prison official liable under section 1983 for violating the Eighth Amendment, the plaintiff

must satisfy three elements. *Goebert v. Lee Cnty.*, 510 F.3d 1312, 1326 (11th Cir. 2007).

First, the plaintiff must show that he had an objectively serious medical or psychiatric need. *Goebert*, 510 F.3d at 1326. "[A] 'serious' medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1187 (11th Cir. 1994) (quotation omitted), *overruled in part on other grounds in Hope v. Pelzer*, 536 U.S. 730, 739 n.9 (2002); *see also Andujar v. Rodriguez*, 486 F.3d 1199, 1203 (11th Cir. 2007) (same). "[T]he medical need must be one that, if left unattended, poses a substantial risk of serious harm." *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003) (quotation marks and citation omitted).

Second, to establish deliberate indifference, the prisoner "must establish both that (1) the defendant actually (subjectively) knew that the prisoner faced a substantial risk of serious harm and that (2) the defendant disregarded that known risk by failing to respond to it in an (objectively) reasonable manner." *Cox v. Nobles*, 15 F.4th 1350, 1358 (11th Cir. 2021) (alterations adopted) (internal quotation marks omitted); *Gish v. Thomas*, 516 F.3d 952, 954 (11th Cir. 2008) (applying same deliberate indifference standard to prisoner suicide claim); *Cook ex rel. Est. of*

*Tessier v. Sheriff of Monroe Cnty., Fla*., 402 F.3d 1092, 1115 (11th Cir. 2005) (same). The likelihood of self-harm must be "a *strong likelihood* rather than a mere possibility that the self-infliction of harm will occur." *Cook*, 402 F.3d at 1115 (internal quotation marks and citation omitted).

The Eleventh Circuit has explained: "To be deliberately indifferent to a strong likelihood that the prisoner will commit suicide, the official must be subjectively aware that the *combination* of the prisoner's suicidal tendencies and the feasibility of suicide in the context of the prisoner's surroundings creates a strong likelihood that the prisoner will commit suicide." *Gish*, 516 F.3d at 954-55; *see also Greffey v. State of Ala. Dep't of Corr*., 996 F. Supp. 1368, 1382 (N.D. Ala. 1998) ("Case law indicates that a 'strong likelihood' of suicide does not exist . . . unless all of the following factors are present: (1) the inmate previously had threatened or attempted suicide; (2) that prior threat or attempt was known to the defendants; (3) the prior threat or attempt was somewhat recent; and, (4) the prior threat or attempt appeared genuine.").

"Where prison personnel directly responsible for inmate care have knowledge that an inmate has attempted, or even threatened, suicide, their failure to take steps to prevent that inmate from committing suicide can amount to deliberate indifference." *Greason v. Kemp*, 891 F.2d 829, 835-36 (11th Cir. 1990); *see Farmer*

*v. Brennan*, 511 U.S. 825, 836 (1994) ("[A]cting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk.").

"The final requirement for a deliberate indifference claim is that a defendant have a causal connection to the constitutional harm." *Goebert*, 510 F.3d at 1327. "Causation, of course, can be shown by personal participation in the constitutional violation." *Id*. at 1327.

### 3.  *Jackson's Complaint Alleges a Serious Medical/Mental-Health Need*

Shively argues that Jackson's third amended complaint fails to allege the existence of an objectively serious medical/mental-health need. Doc. 62 at 28-29. Shively reads Jackson's allegations as "conceding" that he was not actually suicidal at the time he declared a psychological emergency and threatened self-harm, and as admitting that he declared a psychological emergency and threatened to hang himself as a ruse to get out of Wing 4 because he was afraid of being assaulted. Doc. 62 at 28-29 (citing Doc. 36 at 25-26, 28). Shively maintains that "Plaintiff wanting protective custody or to transfer pods is a security/housing/correctional need—not a medical need." Doc. 62 at 29.

There are two problems with Shively's argument. First, she is interpreting Jackson's allegations in the light most favorable to *herself*, not in the light most

favorable to Jackson's claim. Second, Shively is construing Jackson's purported "concession" from his allegations concerning the psychological emergency he declared to Sergeant Plybon on June 24, 2018, at 6:15 p.m. *See* Doc. 36 at 25, ¶ II. Shively ignores (or at least minimizes) events that occurred *after* that, and before Jackson encountered Shively the next morning. When Plybon denied Jackson's psychological emergency on the evening of June 24, he confirmed to Jackson that Jackson was going to get his "ass whipped" and that he should "take it like a man" because no one was going to help him. Doc. 36 at 25, ¶ II.

At the motion-to-dismiss stage, the court must read Jackson's allegations in the light most favorable to Jackson's claims. Jackson's allegations support a reasonable inference that by the time Jackson's cell door was unlocked the morning of June 25, 2018, his mental state had deteriorated to the point of contemplating self-harm and electing the particular means to accomplish it—hanging himself. Doc. 36 at 25. When Jackson saw Shively, he declared a psychological emergency and announced his decision to hang himself. *Id*. He then got a sheet and told Shively, again, that he was going to hang himself. *Id*. Jackson alleges that he then attempted to hang himself. *Id*.

A reasonable person certainly could apply a healthy dose of skepticism to Jackson's allegations and conclude that his attempt at self-harm was feigned. But

Page 24 of 44

the District Court must view Jackson's allegations in the light most favorable to Jackson's claims and must draw all reasonable inferences in favor of Jackson's claims. *Hunnings*, 29 F.3d at 1483; *Iqbal*, 556 U.S. at 678. Viewed in that light, Jackson has plausibly alleged that he had an objectively serious need for psychiatric attention.

### 4.    *Jackson Complaint Alleges Deliberate Indifference*

Shively also argues that Jackson's complaint fails to allege that she had a sufficiently culpable state of mind, that is, deliberate indifference. Doc. 62 at 29-31. She maintains that there is no plausible allegation that she "actually *knew*" that: (1) Jackson's threat was genuine; (2) Jackson "tying a sheet to a T.V. stand and his neck, *in front of a C.O. who is actually in the pod and authorized to enter Plaintiff's cell*, would harm himself;" (3) Jackson "had suicidal tendencies beforehand;" or (4) "that there was a strong likelihood, not feasibility of suicide in the context of his surroundings." *Id*. at 30.

Shively's argument fails because it ignores Jackson's allegations that his suicide attempt in Shively's presence was preceded by his specific threat of suicide by hanging (voiced directly and exclusively to Shively), followed by his second specific threat of suicide by hanging also while holding a bed sheet (voiced directly

to Shively), followed by Jackson creating a ligature with the bed sheet and tying it around a TV stand (while Shively allegedly watched).

In response to Jackson's first threat of self-harm, Shively allegedly exhorted him to make good on his threat—"Well hang then"—without any inquiry, assessment, or examination. After Jackson went to his cell, obtained a bed sheet, returned to Shively and again announced that he was going to hang himself, Shively allegedly laughed at Jackson. Shively then allegedly watched Jackson as he "tied the sheet around the TV Stand and then around [his] neck in an attempt to hang." Doc. 36 at 28, ¶ IV. Shively deliberately did not take any action.

Jackson's allegations—on their face—support a reasonable inference that (1) Shively was aware of a strong likelihood that Jackson would attempt to hang himself, and (2) she responded in a dangerous way by gambling with his threat of suicide. This is sufficient to state a claim of deliberate indifference. *See Farmer*, 511 U.S. at 842 ("[A]n Eighth Amendment claimant need not show that a prison official acted or failed to act believing that a harm actually would befall an inmate; it is enough that the official acted or failed to act despite h[er] knowledge of a substantial risk of serious harm."); *accord Snow ex rel. Snow v. City of Citronelle, Ala.*, 420 F.3d 1262, 1270 (11th Cir. 2005) (denying summary judgment to jail official where plaintiff presented sufficient evidence from which a jury could find that the official had

subjective knowledge of a strong risk that detainee would attempt suicide, and deliberately did not take any action); *Turner v. Phillips*, No. 5:19cv140-TKW-MJF, ___ F. Supp. 3d ___, 2021 WL 3026965, at *11-12 (N.D. Fla. June 21, 2021) (holding that the prisoner's evidence raised a reasonable inference that jail officials knew there was a strong likelihood he would attempt suicide *even though prisoner denied suicidal ideation*, because officials saw the prisoner make an obvious instrument of suicide, a noose), *appeal docketed*, No. 21-12370 (11th Cir. July 13, 2021).

### 5.   *Jackson's Complaint Sufficiently Alleges Causation*

Shively's final argument is that Jackson's Eighth-Amendment claim against her must be dismissed because he "fails to allege a causal relation between Shively's alleged conduct and Plaintiff's alleged injuries." Doc. 62 at 32. Shively explains that Jackson "does not allege any sort of injury at all from his purported suicide attempt," and that he "attempts to conflate Shively's alleged conduct and duties with the alleged beating he received from other inmates after-the-fact." Doc. 62 at 32.

Jackson's third amended complaint alleges an affirmative causal connection between Shively's actions (or inaction) and the deprivation of his Eighth-Amendment right to adequate medical/psychiatric care. Jackson alleges that Shively's act of denying him mental health attention and her act of challenging him

to follow through with his threat of self-harm caused him to attempt suicide and to suffer "paranoia, anxiety, depression" and a "severe neck injury." Doc. 36 at 10, 28; *see also* Doc. 77 at 12, ¶ 9 (clarifying that "[h]is suicide attempt resulted in severe neck injuries . . . [and that] [t]he entire incident, as a whole, resulted in mental/emotional injuries."). Jackson, therefore, has alleged the elements of a § 1983 claim for relief against Shively for violating his rights under the Eighth Amendment.

## C. <u>Qualified Immunity Does Not Provide a Basis to Dismiss Jackson's Claim</u>

Shively next contends that, notwithstanding any constitutional violation, she is entitled to qualified immunity. Doc. 62 at 2-3, 25-33. Shively is "a nurse employed pursuant to a contract between the Florida Department of Corrections and Centurion of Florida, LLC, to provide contractually-specified health care services to the State of Florida's prisoners." Doc. 83 at 2. Pursuant to court order, Shively filed a supplemental memorandum briefing the issue of whether she is entitled to assert the defense of qualified immunity. Doc. 83.

In *Richardson v. McKnight*, 521 U.S. 399, 409 (1997), the Supreme Court held that prison guards—who were employees of a private, for-profit prison management firm—were not entitled to assert the defense of qualified immunity from suit in a prisoner § 1983 action. The Court summarized:

> Our examination of history and purpose . . . reveals nothing special enough about the job or about its organizational structure that would warrant providing these private prison guards with a governmental immunity. The job is one that private industry might, or might not, perform; and which history shows private firms did sometimes perform without relevant immunities. The organizational structure is one subject to the ordinary competitive pressures that normally help private firms adjust their behavior in response to the incentives that tort suits provide—pressures not necessarily present in government departments. Since there are no special reasons significantly favoring an extension of governmental immunity, and since *Wyatt* makes clear that private actors are not automatically immune (*i.e.,* § 1983 immunity does not automatically follow § 1983 liability), we must conclude that private prison guards, unlike those who work directly for the government, do not enjoy immunity from suit in a § 1983 case.

*Richardson*, 521 U.S. at 412 (discussing *Wyatt v. Cole*, 504 U.S. 158 (1992)).

Every court of appeals to address the issue has followed *Richardson*, and has declined to extend qualified immunity to private medical providers like Nurse Shively. *See Hinson v. Edmond*, 205 F.3d 1264, 1347 (11th Cir. 2000) (employee of Wexford Health Sources—a private, for-profit company that contracted with county to provide medical services to inmates in county jail—was categorically ineligible to assert defense of qualified immunity); *Davis v. Buchanan Cnty., Missouri*, 11 F.4th 604, 617-22 (8th Cir. 2021) (employees of large, private, systematically organized, for-profit medical providers Corizon, LLC and Advanced Correctional Healthcare, Inc.—which had assumed the major lengthy administrative task of

providing medical services to prisoners in jail pursuant to contract—were not entitled to assert defense of qualified immunity); *Sanchez v. Oliver*, 995 F.3d 461, 468-72 (5th Cir. 2021) (same as to employee of Correctional Healthcare Companies, LLC—a private organization systematically organized to perform the major administrative task of providing mental-health services to inmates at county jail pursuant to contract with county); *Tanner v. McMurray*, 989 F.3d 860, 870 (10th Cir. 2021) ("[N]either 19th century common law nor modern policy considerations support allowing private medical professionals who are employees of a contractor that provides healthcare in jails or prisons to avail themselves of qualified immunity."); *see also Est. of Clark v. Walker*, 865 F.3d 544, 550-51 (7th Cir. 2017); *McCullum v. Tepe*, 693 F.3d 696, 700-04 (6th Cir. 2012) (questioning a portion of *Hinson*'s analysis, but agreeing with its ultimate conclusion that prison psychiatrist—who worked for non-profit entity that contracted with prison to provide mental-health services to prisoners—was not entitled to assert qualified immunity); *Jensen v. Lane Cnty.*, 222 F.3d 570, 576-79 (9th Cir. 2000).

In any event, this court need not resolve the question of whether Shively is entitled to assert the defense of qualified immunity, because it would be of no help to her here. The Eighth Amendment doctrine governing the outcome of this case was clearly established at the time of the events in question. *See Estelle*, 429 U.S. at 104

("[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain,' proscribed by the Eighth Amendment."); *Snow*, 420 F.3d at 1270; *McElligott*, 182 F.3d at 1260. Accordingly, Shively has not demonstrated that she is entitled to qualified immunity with respect to Jackson's claim of deliberate indifference to a serious medical/psychological need.

### D.    Jackson's Fourteenth-Amendment Claim Must Be Dismissed

Jackson asserts that Shively's actions—which form the basis of his Eighth Amendment claim—also violated the Fourteenth Amendment. Doc. 36 at 22. Shively moves to dismiss Jackson's Fourteenth-Amendment claim on the grounds that his medical deliberate indifference claim is covered by a specific constitutional provision—the Eighth Amendment—and, therefore, must be analyzed under that provision instead of a substantive due process analysis. Doc. 62 at 12-13.

In response, Jackson states that he is raising a *procedural* due process claim because he was "illegally forced to live in an area to which he, and staff involved, knew he would be harmed" without "lawful notice or due process." Doc. 77 at 10, ¶ III.

1.   *Jackson's Allegations Fail to State a Plausible "Substantive" Due Process Claim Against Shively*

"Where a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of substantive due process,' must be the guide for analyzing these claims." *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)); *United States v. Lanier*, 520 U.S. 259, 272, n.7 (1997) ("*Graham* . . . requires that if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process.").

"The Due Process Clause of the Fourteenth Amendment guarantees pretrial detainees the right to basic necessities *that the Eighth Amendment guarantees convicted persons*." *Gish*, 516 F.3d at 954 (emphasis added); *Belcher*, 30 F.3d at 1396. Because Jackson is a convicted person, his medical deliberate indifference claim is "covered by" the Eighth Amendment and he has no plausible "substantive" due process claim grounded in the same conduct. *Graham*, 490 U.S. at 395. Thus, Jackson's substantive due process claim against Shively must be dismissed.

## 2.   *Jackson's Allegations Fail to State a Plausible Procedural Due Process Claim Against Shively*

Jackson's procedural due process claim seeks to hold Shively liable for Jackson being moved from Wing 1 to Wing 4 without adequate process. Jackson admits, however, that it was *Sergeant Lanier* who moved him from Wing 1 to Wing 4 on June 24, 2018. Doc. 36 at 24-25, 28. Jackson fails to allege facts associating Shively with the decision to move him to Wing 4. Accordingly, Jackson's procedural due process claim against Shively must be dismissed. *See Richardson v. Johnson*, 598 F.3d 734, 738 (11th Cir. 2010) (affirming dismissal with prejudice of plaintiff's claims against particular prison officials where the complaint failed to allege facts associating those officials with the allegedly unconstitutional conduct); *Douglas v. Yates*, 535 F.3d 1316, 1321-22 (11th Cir. 2008) (same).[5]

## E.   Jackson's Official-Capacity Claim Against Shively Must Be Dismissed

Jackson states that he is suing each Defendant in his or her individual and official capacities. Doc. 36 at 22. Shively moves to dismiss Jackson's official-capacity claim against her on the grounds that (1) she is not a duly elected or

---

[5] Additionally, a state prisoner has no constitutionally-protected liberty interest in remaining in a particular penitentiary or housing area. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976); *see also Sandin  v. Conner*, 515 U.S. 472, 483-84 (1995) (defining the types of circumstances that may give rise to a liberty interest protected by the Due Process Clause).

appointed constitutional or statutory officer for a government agency, entity, or political subdivision; and (2) Jackson's allegations fail to allege facts sufficient to establish liability under *Monell v. Dep't of Social Servs. of New York*, 436 U.S. 658 (1978). Doc. 62 at 15-18.

"Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) (quoting *Monell*, 436 U.S at 690 n.55); *Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991). Thus, in a section 1983 action "a claim against a defendant in his official capacity is the same as a claim against his employer." *Christman v. Saint Lucie Cnty., Fla.*, 509 F. App'x 878, 879 (11th Cir. 2013) (citing *McMillian v. Monroe Cnty., Ala.*, 520 U.S. 781, 785 n.2 (1997)); *Faulkner v. Monroe Cnty. Sheriff's Dep't.*, 523 F. App'x 696, 701 (11th Cir. 2013) ("A suit against a person in their official capacity is to be treated as a suit against the entity.").

Several district courts have held that this also applies to private entities, such as Centurion, which perform functions traditionally within the exclusive prerogative of the state. *See Rodriguez v. Asencio*, No. 3:17-cv-155-RV-HTC, 2019 WL 3916268, at *10 (N.D. Fla. July 29, 2019) (concluding that an official-capacity claim against employees of Corizon Health or Centurion were claims against Corizon

Page 34 of 44

Health or Centurion), *report and recommendation adopted* 2019 WL 3904224 (N.D. Fla. Aug. 19, 2019); *Pugliese v. Parker*, No. 18-1189-JDT-cgc, 2019 WL 2476753, at *3 (W.D. Tenn. June 12, 2019) (holding that the plaintiff's official-capacity claim against the defendant doctor was a claim against Centurion Medical); *see Rees v. Corizon Med. Servs*., No. 3:17-CV-588-JD-MGG, 2018 WL 1014232, at *4 (N.D. Ind. Feb. 22, 2018) (holding that "[t]o the extent that Rees seeks to hold Nurse Frye liable in her official capacity for enforcing Corizon's policy, that claim is merely duplicative of Rees' claim against Corizon").

Unlike personal liability that only requires the plaintiff to show that the official—acting under color of state law—caused the deprivation of the plaintiff's federal rights, "a governmental entity is liable under § 1983 only when the entity itself is a 'moving force' behind the deprivation . . . thus, in an official capacity suit the entity's 'policy or custom' must have played a part in the violation of federal law." *Graham*, 473 U.S. at 166 (citations omitted). In other words, to establish liability in the official capacity, a plaintiff must allege that:

(1) his constitutional rights were violated;

(2) there was a custom or policy that constituted deliberate indifference to that constitutional right; and

(3) the policy or custom caused the violation.

Page 35 of 44

*McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004) (citing *City of Canton v. Harris*, 489 U.S. 378, 388 (1989); *Monell*, 436 U.S. at 694-95. This "*Monell* policy or custom requirement applies in suits against private entities performing functions traditionally within the exclusive prerogative of the state, such as the provision of medical care to inmates." *Buckner v. Toro*, 116 F.3d 450, 453 (11th Cir. 1997).

Jackson has not alleged, much less identified, any official policy or custom of Centurion that caused the violation of his constitutional right to adequate medical/psychiatric care. Accordingly, Jackson's Eighth-Amendment official-capacity claim against Shively must be dismissed.

F. **Shively's Motion to Dismiss Jackson's Claim for Compensatory Damages Should Be Denied Without Prejudice**

Jackson seeks $80,000.00 in compensatory damages from Shively for mental, emotional and physical injuries he suffered on June 25, 2018. Doc. 36 at 10, 22. Shively asserts that Jackson is barred under 42 U.S.C. § 1997e(e) from recovering compensatory damages for mental and emotional injuries, because he fails to allege that he suffered a physical injury as a result of Shively's alleged unconstitutional conduct. Doc. 62 at 20-21. Shively explains that (1) any physical injury from Jackson's attempt to hang himself was self-inflicted and, therefore, does not qualify

under § 1997e(e); and (2) any physical injuries Jackson suffered from the inmate assaults were not caused by her deliberate indifference to his threat of self-harm. *Id*.

Jackson's response to the motion to dismiss asserts that his complaint should be construed liberally to allege that the "severe neck injuries" he sustained, Doc. 36 at 10, were the result of his attempt to hang himself, and that the neck injuries satisfy § 1997e(e)'s physical-injury requirement. Doc. 77 at 12. Jackson also argues that he should be able to recover compensatory damages from Shively for the physical injuries he sustained from the inmate assaults, because "If Mr. Jackson psych emergency would have been dealt with accordingly, those 4 inmates would not have had access to him, and therefore, could not have carried out their assault." Doc. 77 at 12.

Section 1997e(e) imposes a "[l]imitation on recovery" in federal civil actions brought by prisoners. The provision states:

> No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act (as defined in section 2246 of Title 18).

42 U.S.C. § 1997e(e). The Eleventh Circuit has interpreted § 1997e(e) as barring "requests for compensatory damages stemming from purely mental or emotional

harms" where no physical injury is shown. *Hoever v. Marks*, 993 F.3d 1353, 1358 (11th Cir. 2021).

The District Court need not decide—at the motion-to-dismiss stage—whether Jackson's allegations plausibly satisfy the physical-injury requirement of § 1997e(e). Shively has filed a motion for summary judgment asserting that, based on Jackson's medical records, he will be unable to prove that he suffered *any* physical injury—even a self-inflicted one—from Shively's alleged medical deliberate indifference. Doc. 85. The issue of Jackson's ability to recover compensatory damages, therefore, can more appropriately be addressed the summary-judgment stage.

## G.  <u>Shively's Motion to Dismiss Jackson's Claim for Punitive Damages Must be Denied</u>

Jackson seeks from Shively $80,000 in punitive damages for Shively's alleged deliberate indifference to Jackson's medical/psychiatric needs. Doc. 36 at 22. Shively argues that Jackson's claim for punitive damages should be dismissed because "Plaintiff fails to plausibly allege conduct that is willful and malicious." Doc. 62 at 23.

Punitive damages may be awarded on a § 1983 claim where the defendant's "'conduct is shown to be motivated by evil motive or intent or when it involves

reckless or callous indifference to the federally protected rights of others.'" *Hooks v. Brewer*, 818 F. App'x 923, 931 (11th Cir. 2020) (quoting *Smith v. Wade*, 461 U.S. 30, 55 (1983)). Jackson's allegations plausibly satisfy that standard. Accordingly, Shively's motion to dismiss Jackson's request for punitive damages should be denied.

## H. Shively's Motion to Dismiss Jackson's Claim for Injunctive Relief Should be Granted

Jackson also seeks prospective injunctive relief, namely, that this court order "Interstate Transfer For Safety Reasons." Doc. 36 at 22. Shively moves to dismiss this claim for injunctive relief because: (1) she is incapable of providing the requested relief because she has no authority over housing/transfer matters; and (2) Jackson's claim for injunctive relief is moot because he no longer is confined at the NWFRC. Doc. 62 at 18-20.

"[T]o have standing to obtain forward-looking relief, a plaintiff must show a sufficient likelihood that he will be affected by the allegedly unlawful conduct in the future." *Wooden v. Bd. of Regents of Univ. Sys. of Georgia*, 247 F.3d 1262, 1283 (11th Cir. 2001). The Eleventh Circuit explained in *Church v. City of Huntsville*, 30 F.3d 1332 (11th Cir. 1994):

> Because injunctions regulate future conduct, a party has standing to seek injunctive relief only if the party alleges, and ultimately proves, a

real and immediate—as opposed to a merely conjectural or hypothetical—threat of future injury. *Id*. at 102, 103 S. Ct. at 1665. Logically, "a prospective remedy will provide no relief for an injury that is, and likely will remain, entirely in the past." *American Postal Workers Union v. Frank*, 968 F.2d 1373, 1376 (1st Cir. 1992). Although "past wrongs are evidence bearing on whether there is a real and immediate threat of repeated injury," *O'Shea v. Littleton*, 414 U.S. 488, 496, 94 S. Ct. 669, 676, 38 L. Ed. 2d 674 (1974), "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." *Lyons*, 461 U.S. at 102, 103 S. Ct. at 1665 (alterations in original) (quoting *O'Shea*, 414 U.S. at 496, 94 S. Ct. at 676).

*Church*, 30 F.3d at 1337 (first citation to *City of Los Angeles v. Lyons*, 461 U.S. 95, 103 S. Ct. 1660 (1983)).

Jackson acknowledges in his complaint that he was transferred from the NWFRC within days of the June 2018 incident. Doc. 36 at 29. When Jackson initiated this action on April 19, 2019, he was confined at the Hamilton Correctional Institution. Doc. 1. During the 2½-year pendency of this litigation, Jackson has not been returned to the NWFRC, and has been confined at various institutions outside of this judicial district.

Jackson states that it is possible he could be transferred back to the NWFRC because it is a reception center and he has been housed there twice in fifteen years.

Doc. 77 at 11.[6] Jackson's speculation is insufficient to establish that there is a "real and immediate threat" that the cause of his past injury—his being housed at the NWFRC under the supervision of the same defendants and under the unique circumstances that gave rise to his psychological emergency and ensuing threat of self-harm—will recur. Accordingly, Jackson's claim for prospective injunctive relief against Shively must be dismissed for lack of standing. *See Williams v. Bd. of Regents of Univ. Sys. of Georgia*, 477 F.3d 1282, 1302-03 (11th Cir. 2007) (holding that the plaintiff lacked standing to pursue injunctive relief because the threat of harm to her was merely conjectural); *see also, e.g., Quinlan v. Pers. Transp. Servs. Co.*, 329 F. App'x 246, 249 n.5 (11th Cir. 2009) (holding that a prisoner lacked standing to pursue claim for injunctive relief because he failed to indicate a future circumstance where he again would be transported by the particular defendant and, therefore, his request for injunctive relief "did not rise above the speculative level.").

## I. <u>Shively's Motion to Dismiss Jackson's Claims Referencing State Law and Miscellaneous Treaties Should be Granted</u>

In a section titled "Legal Claims," Jackson makes a passing reference to the following:

---

[6] Jackson was received into the Florida Department of Corrections on September 1, 2006. Doc. 62-1, Ex. 1. His convictions arose out of Orange County, Florida. *Id*.

> The Universal Declaration of Human Rights. International Conventions 10-12. Article 1 of the United Nations Conventions, and under the color of state law violated the Florida Constitution and the Department of Corrections Florida Administrative Code Ch. 33-208.02 Rules of Conduct, e.g., "Officially designated duties."

Doc. 36 at 22. Shively asserts that these references do not provide a plausible basis for recovery under § 1983. Doc. 62 at 13-15. Jackson's response does not address Shively's argument and, instead, maintains only that his rights under the United States Constitution were violated. Doc. 77 at 10.

Because Jackson has not pleaded or argued any substantive claims beyond his § 1983 claims for violation of the United States Constitution, his conclusory references to other sources of alleged rights are deemed abandoned. *See Barnes v. AstraZeneca Pharm. LP*, 253 F. Supp. 3d 1168, 1171 (N.D. Ga. 2017) ("When an argument is raised upon a motion to dismiss that a claim is subject to dismissal, and the non-moving party fails to respond to such an argument, such claims are deemed abandoned and subject to dismissal."); *Haasbroek v. Princess Cruise Lines, Ltd.*, 286 F. Supp. 3d 1352, 1358 n.4 (S.D. Fla. 2017) (same); *see also McMaster v. United States*, 177 F.3d 936, 940-41 (11th Cir. 1999) (noting that a claim may be considered abandoned when the allegation is included in the plaintiff's complaint, but he fails to present any argument concerning this claim to the district court).

## IV. CONCLUSION

For the reasons set forth above, the undersigned respectfully **RECOMMENDS** that:

1.       Defendant Shively's motion to dismiss, Doc. 62, be **GRANTED IN PART** and **DENIED IN PART** as follows:

     a.       Shively's motion to dismiss should be **GRANTED** as to the following claims against her, and these claims should be **DISMISSED**:

          i.       Plaintiff's due-process claim,

          ii.      Plaintiff's official-capacity claim,

          iii.     Plaintiff's claim for injunctive relief, and

          iv.      Plaintiff's claims for violations of treaties and state laws.

     b.       Shively motion to dismiss should be **DENIED** in all other respects.

2.       This matter be returned to the undersigned for further pretrial proceedings.

At Pensacola, Florida, this <u>29th</u> day of November, 2021.

/s/ *Michael J. Frank*
**Michael J. Frank**
**United States Magistrate Judge**

## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days of the date of the report and recommendation. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u> An objecting party must serve a copy of the objections on all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.**