**UNITED STATES DISTRICT COURT FOR THE**
**NORTHERN DISTRICT OF FLORIDA**
**PANAMA CITY DIVISION**

ANTWAN JOVAN JACKSON,

      Plaintiff,

v.                                Case No.  5:19-cv-114-MCR/MJF

SERGEANT LANIER, *et al.*,

      Defendants.

                                 /

## REPORT AND RECOMMENDATION

Defendants Lanier, Plybon and Justice have moved for summary judgment in this section 1983 action which alleges that Lanier arranged for inmates to assault Jackson and that Plybon and Justice were deliberately indifferent to Plaintiff's safety and threat of self-harm, in violation of the Eighth Amendment. Doc. 86. Jackson opposes the motion. Doc. 97. For the reasons set forth below, the undersigned recommends that Defendants' motion for summary judgment be denied.[1]

---

[1] The District Court referred this case to the undersigned to address preliminary matters and to make recommendations regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2(C); *see also* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

## I. BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Antwan Jackson is an inmate of the Florida Department of Corrections currently confined at Lake Correctional Institution ("Lake CI") in Clermont, Florida. Jackson initiated this lawsuit on April 19, 2019, by filing a civil rights complaint under 42 U.S.C. § 1983. Doc. 1. Jackson's third amended complaint is the operative complaint. Doc. 36.

Jackson's third amended complaint names as Defendants three prison officials and a nurse at the Northwest Florida Reception Center ("NWFRC")—Sergeant Lanier, Sergeant Plybon, Officer Justice and Nurse Shively. Doc. 36 at 2. This report and recommendation addresses only Jackson's claims against Lanier, Plybon and Justice. Accordingly, any reference to "the Defendants" is to Lanier, Plybon and Justice. A separate report and recommendation addresses Shively's motion for summary judgment.

Jackson's claims against the Defendants arise from an incident that occurred at NWFRC on June 23-25, 2018. Doc. 36. Jackson alleges that Lanier ordered Jackson to show him his penis and, when Jackson refused, Lanier arranged for inmates to assault Jackson. Jackson alleges that Plybon and Justice (1) knew of the planned assaults but failed to protect him, (2) ignored Jackson's pleas for help, his

psychological emergency and his attempt at self-harm, and (3) witnessed the assaults but failed to stop them.

Defendants assert that they are entitled to summary judgment because: (1) Lanier's alleged sexual verbal abuse does not violate the Constitution; and (2) Jackson admitted to a nurse that his injuries were self-inflicted. Doc. 86 at 6-7. Jackson has responded in opposition to the motion. Doc. 97.

## II. FACTS RELEVANT TO CLAIMS AGAINST LANIER, PLYBON, AND JUSTICE[2]

The material facts set forth below are drawn from the following sources: (1) Jackson's verified third amended complaint, Doc. 36; (2) the evidentiary materials attached to Defendants' motion for summary judgment and supplement, Doc. 86, Exs. B-I; Doc. 89, Exs. J-K; and (3) the evidentiary materials attached to Jackson's response, Doc. 97, Exs. A-D.[3] When the parties offer conflicting accounts of the events in question, the court "sets forth the facts, drawn from the evidence presented, in the light most favorable to the plaintiff." *See Snow ex rel. Snow v. City of Citronelle*, 420 F.3d 1262, 1265 (11th Cir. 2005). Matters stated as "facts" for

---

[2] These facts do not relate all the details of the incident at NWFRC—only those relevant to Jackson's claims against Lanier, Plybon, and Justice.

[3] A verified complaint constitutes summary-judgment evidence just as if it were an affidavit. *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014); *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1305 n.23 (11th Cir. 2011).

purposes of summary judgment review may not be the actual facts. *See Montoute v. Carr*, 114 F.3d 181, 182 (11th Cir. 1997).

On June 23, 2018, while Jackson was confined at NWFRC in Quad 1 of K-Dormitory ("Quad 1"), Sergeant Lanier approached Jackson's cell and stated: "Let me see that long dick since everyone else wants to see it, if not cut the son of a bitch, you got 18 hours." Doc. 36 at 24, ¶ I. Jackson did not comply with Lanier's request. *Id*.

The following morning, on June 24, 2018, Lanier returned to Jackson's cell and commented: "Your time is up so what you go [sic] do," then walked away. *Id*., ¶ I. At 3:00 p.m., Lanier directed another inmate to pack Jackson's property, and informed Jackson that Captain Jenkins authorized Lanier to move Jackson to Quad 4 of K-Dormitory ("Quad 4"). *Id*., ¶ I. Jackson believed that Lanier orchestrated the move because he arranged for inmates in Quad 4 to assault Jackson in retaliation for Jackson refusing to comply with Lanier's "sexual request." *Id*., ¶ I. After his property was packed, Jackson was "forced" to move to Quad 4. Doc. 97, Ex. D at 2.

Approximately 3 hours later, at 6:15 p.m., Jackson attempted to exit Quad 4 with his belongings because he was "scared for [his] life." Doc. 97, Ex. D at 2. When Jackson reached the sally port area, he told Sergeant Plybon that he had a psychological emergency and was in fear for his life. Doc. 36 at 25, ¶ II. Plybon

responded, "Fuck your emergency, ain't no audio out here get your ass back in the quad!" *Id*., ¶ II. Plybon then informed Jackson that Lanier advised him not to allow Jackson to go back to Quad 1. *Id*., ¶ II. Plybon also told Jackson that he was "about to get [his] ass wiped" and to "take it like a man." *Id*., ¶ II. Jackson returned to his cell in Quad 4. *Id*., ¶ II. Jackson's cell door was locked and remained locked until the following morning. *Id*., ¶ II.

At 3:00 a.m., on June 25, 2018, Plybon unlocked Jackson's cell door for Jackson to report to the hallway to receive his medication. Doc. 36 at 25, ¶ II. Defendant Nurse Shively administered Jackson's medication. Doc. 36 at 25, ¶ II. Jackson told Shively that he was having a psychological emergency and was going to hang himself. Doc. 36 at 25, ¶ II. Shively responded: "Well hang then." *Id*., ¶ II.

Jackson went back to his cell, got a sheet, returned to the "front door," and informed Plybon and Shively that he was going to hang himself. *Id*. at 25-26, ¶ II. Plybon and Shively laughed at Jackson. *Id*. at 26, ¶ II. Shively, Plybon and Justice then watched Jackson as he "tied the sheet to the TV stand and then around [his] neck hanging until the sheet came loose" and dropped him to the floor. *Id*. at 26, ¶ II. Plybon, Shively and Justice observed Jackson's hanging attempt but made no effort to intervene or otherwise respond. *Id*. at 26, ¶ II.

Jackson got up from the floor, went to "the door," and again tried to leave Quad 4. Doc. 36 at 26, ¶ II. Two inmates threatened Jackson, and one of the inmates struck him in the back of the head with a closed fist. Doc. 36 at 26, ¶ II. Plybon and Justice saw the assault but did nothing. *Id.*, ¶ II. Jackson went back to his cell. Moments later, one of the same inmates entered Jackson's cell and threatened him again. *Id.*, ¶ II The other inmate entered Jackson's cell and the two punched and kicked Jackson. *Id.*, ¶ II. A third inmate joined the assault on Jackson and stated, "This is for Lanier." *Id.*, ¶ II.

During the assault in Jackson's cell, Jackson attempted to escape, but one of his attackers slammed the cell door closed. *Id.* at 26-27, ¶ III. After Jackson was assaulted, one of his attackers told an inmate in the dayroom to tell Justice to open Jackson's cell door. *Id.* at 27, ¶ III. Jackson's cell door immediately opened, and Jackson and his assailants exited the cell. *Id.*, ¶ III. Jackson approached the "front door" of Quad 4, and Justice immediately opened it to allow Jackson to exit Quad 4 and enter Quad 1. *Id.*, ¶ III.

A few minutes after Jackson entered Quad 1, Justice allowed one of Jackson's attackers to enter Quad 1. Doc. 36 at 27, ¶ III. That inmate found Jackson, threatened him, and attempted to stab him with a homemade knife. *Id.*, ¶ III. A few minutes later, Justice allowed another inmate from Quad 4 to enter Quad 1. *Id.*, ¶ III. That

inmate threatened Jackson, exited Quad 1, and then returned to Quad 4 where he assaulted Jackson in the dayroom. *Id*., ¶ III.

After the assaults, Justice "called in" Jackson's psychological emergency. *Id*., ¶ III. Justice allowed Jackson to secure himself in the front entrance between the "front door" and the "grill gate." *Id*., ¶ III.

At 5:00 a.m. on June 25, 2018, Jackson was taken to the medical department where he was assessed by Licensed Practical Nurse C. Dalton. Doc 97, Ex. B at 18. Dalton noted that Jackson "self-report[ed] hanging," and that he had a dime-sized bump with pinpoint laceration to his left eyebrow. *Id*. at 18.

Nurse Dalton also performed a "Mental Health Emergency Protocol." Doc. 97, Ex. B at 19.[4] Dalton's objective assessment described Jackson as "quiet," with a "depressed" affect. *Id*. at 19. Dalton reported the bump with pinpoint laceration to Jackson's left eyebrow. *Id*. at 19. Dalton determined that "there may be risk of injury to self or others." *Id*. at 19. Dalton contacted a clinician, completed a "Staff Request/Referral to Mental Health," and placed Jackson in an infirmary isolation management room to prevent self-injury and to provide protection and observation. *Id*. at 19.

---

[4] Where a page of an exhibit bears more than one page number, the court cites the number appearing at the bottom center of the page.

During that visit, Dalton also performed a "Head Trauma Protocol." Doc. 97, Ex. B at 20. As part of the subjective assessment, Dalton noted that Jackson described a 1½-foot fall caused by attempted hanging. *Id*. at 20. Jackson indicated that his injury was not witnessed. *Id*. at 20. Jackson reported that he had a headache and that he lost consciousness on scene for a "couple seconds." *Id*. at 20. Nurse Dalton noted a hematoma and laceration to Jackson's left eyebrow. *Id*. at 20. Jackson's vital signs and neurological assessment were normal.

While confined in the infirmary, on June 26, 2018, Jackson reported to a correctional officer making his rounds (Captain Martin) that he had a P.R.E.A. allegation to report. Doc. 86, Exs. B, C. Jackson related his allegation concerning Lanier ordering Jackson to show him his penis. *Id*. In his witness statement, Jackson stated that he was assaulted the prior morning (June 25, 2018) in relation to the incident. *Id*.

As a result of Jackson's allegation, Registered Nurse A. Peters conducted an "Alleged Sexual Battery Protocol." Doc. 86, Exs. B, F. Jackson reported to Nurse Peters: "Sergeant Lanier said I want to seek your dick." Doc. 86, Ex. F. Jackson stated that he did not carry out Lanier's request and, as a result, was moved to a different dorm where he was "jumped on by other inmates" the day after placement.

Page 8 of 14

*Id.* Peters ordered a "Mental Health Referral." *Id.* Peters noted blood on Jackson's shirt, which Jackson attributed to the inmate assault. *Id.*

On June 27, 2018, Jackson submitted a sick call request complaining of "broken ribs, trouble breathing, chest-pains, black eye, swol[l]en eye, double vision, knee pains, back pains, nosebleed, neck pains." Doc. 97, Ex. C at 27. Jackson reported that his symptoms started "Monday June 25th after I was assaulted." *Id.* at 27.

On June 28, 2018, Jackson was seen in sick call where he reported pain in his ribs, back and neck, as well as a headache and blurred or double vision. Doc. 97, Ex. B at 21-22. Jackson attributed his injuries to being assaulted by three inmates. *Id.* The nurse performed back pain and head trauma protocols. *Id.* The nurse noted slight swelling to Jackson's left ribs, but no swelling to his back and no bruising. *Id.* at 21 The nurse also noted bruising under Jackson's right eye. *Id.* at 22. The examinations otherwise were unremarkable.

Jackson states that he received the following injury from attempting to hang himself: "hurt my neck bad." Doc. 97, Ex. D, Pl.'s Aff. at 3. Jackson states that he received the following injuries from being assaulted: "head, back, neck and rib, eye swol[l]en, I lost hearing in my right ear and I have involuntary movement in my left hand from being hit and kicked in my head so many times." *Id.* at 3-4.

Page 9 of 14

### III. PLAINTIFF'S CLAIMS AGAINST LANIER, PLYBON, AND JUSTICE

Jackson claims that Lanier violated his rights under the Eighth Amendment on June 23 and 24, 2018, when he ordered Plaintiff to show him his penis and, when Jackson refused, arranged for Jackson to be assaulted by other inmates. Doc. 36 at 24-25.

Jackson alleges that Plybon violated his rights under the Eighth Amendment on June 24 and 25, 2018, when Plybon knew Jackson would be assaulted but failed to protect him, and when Plybon was deliberately indifferent to Jackson's psychological emergency and threat of self-harm. *Id*. at 25-26.

Jackson alleges that Justice violated his rights under the Eighth Amendment on June 25, 2018, when Justice knew Jackson would be assaulted but failed to protect him. *Id*. at 26-27.

As relief, Jackson seeks $80,000.00 in compensatory damages; $80,000.00 in punitive damages; and "any additional relief this Honorable Court deems Just and Proper." *Id*. at 22.

### IV. SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure states that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ.

P. 56(a). The court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party. *See Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1303 (11th Cir. 2009). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004). A fact is "material" if it could affect the outcome of the case. *Anderson*, 477 U.S. at 248; *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995). In evaluating a summary judgment motion, all "justifiable inferences" must be resolved in the non-moving party's favor so long as there is a genuine dispute as to those facts. *Beard v. Banks*, 548 U.S. 521, 529 (2006); *see Scott v. Harris*, 550 U.S. 372, 380 (2007).

## V. DISCUSSION

### A.   Lanier Is Not Entitled to Summary Judgment on Jackson's Eighth-Amendment Claim

Lanier asserts that he is entitled to summary judgment because claims of verbal harassment and threats do not state a cognizable constitutional claim. Doc. 86 at 6. Lanier is correct that verbal abuse, alone, is insufficient to state a constitutional

Page 11 of 14

claim. *Hernandez v. Fla. Dep't of Corr.*, 281 F. App'x 862, 866 (11th Cir. 2008) (citing *Edwards v. Gilbert*, 867 F.2d 1271, 1274 n.1 (11th Cir. 1989)). However, Jackson's claim against Lanier is not confined to verbal harassment. Jackson also claims that Lanier arranged for, or facilitated, a physical assault on Jackson by other inmates to punish Jackson for his refusal to show Lanier his penis. That claim is cognizable under the Eighth Amendment.

"The Eighth Amendment, which the Supreme Court has extended to the States, prohibits the infliction of 'cruel and unusual punishments.'" *Purcell ex rel. Estate of Morgan v. Toombs County*, 400 F.3d 1313, 1319 (11th Cir. 2005) (quoting U.S. Const. amend. VIII). "[W]hile the Constitution does not require prisons to be comfortable, it also does not permit them to be inhumane, and it is now settled that the conditions under which a prisoner is confined are subject to scrutiny under the Eighth Amendment." *Purcell*, 400 F.3d at 1319 (internal quotations and citations omitted). "A prison official's deliberate indifference to a known, substantial risk of serious harm to an inmate violates the Eighth Amendment." *Marsh v. Butler County*, 268 F.3d 1014, 1028 (11th Cir. 2001), *abrogated on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 561-63 (2007).

Taking the summary judgment evidence in the light most favorable to Jackson, a reasonable jury could find that Lanier's orchestrating a physical assault

Page 12 of 14

on Jackson to punish him for refusing to comply with Lanier's order to show him

his penis violated Jackson's rights under the Eighth Amendment.

**B.**     **Jackson Has Provided Sufficient Facts to Create a Triable Issue as to Whether Lanier, Plybon, and Justice Are Liable for His Injuries**

Defendants' second basis for summary judgment states, in total:

> While Plaintiff alleges in his Third Amended Complaint that he was assaulted by unidentified inmates (See, e.g., Doc. 36, pgs. 26, 27), upon examination by the nurse he actually admitted that his injuries were self inflicted. ("Inmate Jackson reported to medical staff that he had attempted hang himself and this was how he sustained his injuries which consisted of: Dime sized bump to the center of forehead and laceration to the left eyebrow.")

> Accordingly, Plaintiff's allegations that all of the Defendants are liable for failure to protect him, by participating in moving his cell location, which resulted in other inmates attacking him, are belied by his own admission to the medical staff who treated him.

Doc. 86 at 7.

Defendants' argument ignores Jackson's sworn allegations, and his additional

statements to medical personnel, that some of his injuries were the result of the

inmate assaults which Lanier orchestrated and which Plybon and Justice allowed to

occur. A jury reasonably could find the disputed facts in Jackson's favor and

determine that Lanier, Plybon and Justice violated Jackson's Eighth-Amendment

rights by deliberately disregarding a substantial risk of serious harm to Jackson's

health and safety.

Page 13 of 14

## VI. CONCLUSION

For the reasons set forth above, the undersigned respectfully **RECOMMENDS** that:

1.     Defendants Lanier, Plybon and Justice's motion for summary judgment, Doc. 86, be **DENIED**.

2.     This matter be returned to the undersigned for further pretrial proceedings.

At Panama City, Florida, this <u>28th</u> day of March, 2022.

/s/ *Michael J. Frank*
**Michael J. Frank**
**United States Magistrate Judge**

## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days of the date of the report and recommendation. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u> An objecting party must serve a copy of the objections on all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.**